**No. 2022-1793**

# In the United States Court of Appeals for the Federal Circuit

MAGID GLOVE & SAFETY MANUFACTURING CO. LLC,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade,
No. 1:16-cv-00150-TCS.
The Honorable **Timothy C. Stanceu**, Judge Presiding.

## BRIEF OF PLAINTIFF-APPELLANT

LAWRENCE FRIEDMAN
(lfriedman@barnesrichardson.com)
BARNES, RICHARDSON & COLBURN LLP
303 East Wacker Drive
Suite 305
Chicago, Illinois 60601
(312) 565-2000

*Counsel for Magid Glove & Safety Manufacturing Co. LLC*

COUNSEL PRESS · (866) 703-9373 PRINTED ON RECYCLED PAPER

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1793

**Short Case Caption** MAGID GLOVE & SAFETY MFG. CO. LLC v. UNITED STATES

**Filing Party/Entity** Appellant

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/14/2022

Signature: /s/Lawrence M. Friedman

Name: Lawrence M. Friedman

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| MAGID GLOVE & SAFETY MFG. CO. LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| See attached | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

UNTED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MAGID GLOVE & SAFETY MFG. CO. LLC,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

No. 22-1793

**LIST OF RELATED CASES**

| | |
|---|---|
| 1:16-cv-00036-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:16-cv-00040-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:16-cv-00044-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:16-cv-00149-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:16-cv-00151-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:16-cv-00152-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:16-cv-00153-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:16-cv-00166-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:17-cv-00001-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:17-cv-00003-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:17-cv-00004-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |
| 1:17-cv-00098-TCS | Magid Glove & Safety Manufacturing Co. LLC v. United States |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......... i

STATEMENT OF RELATED CASES .......... 1

STATEMENT OF JURISDICTION .......... 2

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

A. Statement of Facts .......... 5

SUMMARY OF THE ARGUMENT .......... 8

ARGUMENT .......... 9

A. Standard of Review .......... 9

B. Tariff Classification Under the Harmonized Tariff Schedule of the United States .......... 10

C. The Court of International Trade Incorrectly Ignored this Court's Decision in *Kalle USA, Inc. v. United States* .......... 11

D. The Court of International Trade Incorrectly Concluded that Section XI, Note 1(h) Applies only to Fabric Treated with Plastic when in Basic Uncut or Rectangular Form .......... 16

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

## Cases

*Archer Daniels Midland Co. v. United States*,
561 F.3d 1308 (Fed. Cir. 2009) ....................17

*Bausch & Lomb, Inc. v. United States*,
148 F.3d 1363 (Fed. Cir. 1988) ....................9, 10

*BenQ Am. Corp. v. United States*,
646 F.3d 1371 (Fed. Cir. 2011) ....................10

*CamelBak Prods., LLC v. United States*,
649 F.3d 1361 (Fed. Cir. 2011) ....................14

*DaimlerChrysler Corp. v. United States*,
361 F.3d 1378 (Fed. Cir. 2004). .................... 13-14

*Deckers Outdoor Corp. v. United States*,
714 F.3d 1363 (Fed. Cir. 2013) ....................10

*GRK Can. Ltd. v. United States*,
761 F.3d 1354 (Fed. Cir. 2014) ....................14

*Icicle Seafoods, Inc. v. Worthington*,
475 U.S. 709 (1986)....................14

*Intel Sing., Ltd. v. United States*,
83 F.3d 1416 (Fed. Cir. 1996) ....................11

*Kalle USA, Inc. v. United States*,
923 F.3d 991 (Fed. Cir. 2019) .................... *passim*

*Lemans Corp. v. United States*,
660 F.3d 1311 (Fed. Cir. 2011) ....................10

*MetChem, Inc. v. United States*,
513 F.3d 1342 (Fed. Cir. 2008) ....................7

*Park B. Smith, Ltd. v. United States*,
347 F.3d 922 (Fed. Cir. 2003) ....................9

*Rubie's Costume Co. v. United States*,
337 F.3d 1350 (Fed. Cir. 2003) ....................................................................7

*Seminole Tribe of Florida v. Florida*,
517 U.S. 44 (1996)...................................................................................13

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)....................................................................................7

*Universal Elecs. v. United States*,
112 F.3d 488 (Fed. Cir. 1997) ...............................................................9, 11

*Warner-Lambert Co. v. United States*,
407 F.3d 1207 (Fed. Cir. 2005) ....................................................................7

*Well Luck Co. v. United States*,
887 F.3d 1106 (Fed. Cir. 2018). ..................................................................18

**Statutes**

19 U.S.C. § 3004(c) ......................................................................................10

28 U.S.C. § 1295(a)(5).....................................................................................2

28 U.S.C. § 1581(a) ........................................................................................2

Chapter 39, Note 10, HTSUS .........................................................................17

Chapter 59, Note 2, HTSUS .............................................................. 12, 13, 15, 16

General Rule of Interpretation (GRI) 1, HTSUS.............................................15

Section XI, Note l(h), HTSUS .................................................................. *passim*

Subheading 3926.20.1050, HTSUS ............................................................ *passim*

Subheading 6116.10.5520, HTSUS ............................................................ *passim*

**Other Authorities**

*Brief of Petitioner-Appellant*, Magid Glove & Safety Mfg. Co. LLC v. United
States, 2022 Ct. Intl. Trade LEXIS 26 (No. 16-00150).......................................19

*Dictionary of Textiles* 99 (1st ed. 1915) ..........................................................19

Explanatory Notes to the Harmonized System, Section XI, at Note 11 .......... 10, 16

Fed. Cir. R. 4(a)(1)(B) ....................................................................................2

Fed. Cir. R. 35 ..................................................................................................15

Fed. Cir. R. 35(a) ............................................................................................15

Fed. Cir. R. 47.5 ................................................................................................1

*The American Heritage Dictionary of the English Language*, 468 (New College ed. 1975) ..................................................................................................19

**Agency Materials**

HQ H220278 (Apr. 1, 2014) ............................................................ 4, 7, 18

HQ H246529 (Dec. 20, 2013) ...............................................................................7

*Modification and Revocation of Ruling Letters and Revocation of Treatment Relating to the Tariff Classification of Polyurethane Coated Gloves*, 48 Cust. B. & Dec. 170 (Apr. 30, 2014) ..........................................................................4

NYRL N013115 (July 19, 2007) ....................................................................4, 6

NYRL N042821 (Nov. 21, 2008) .......................................................................4

NYRL N238691 (Feb. 26, 2013) .......................................................................7

*Proposed Modification and Revocation of ruling Letters and Proposed Revocation of Treatment Relating to the Tariff Classification of Polyurethane Coated Gloves*, 46 Cust. B. & Dec. 38 (Aug. 22, 2012) ..............................................7

*Revocation of Ruling Letter and Revocation of Treatment Relating to the Tariff Classification of Polyurethane Coated Gloves* 48 Cust. B & Dec 106 (Jan. 29, 2014) .....................................................................................................7

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for plaintiff-appellant Magid Glove & Safety Mfg. Co. LLC makes the following statements:

(1) No other appeal in or from the same civil action or proceeding in the trial court was previously before this or any other appellate court.

(2) The only cases known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal is Court of International Trade court number 16-00150, the case from which the current appeal is taken, and Court of International Trade court numbers 16-00036, 16-00040, 16-00044, 16-00149, 16-00151, 16-00152, 16-00153, 16-00166, 17-00001, 17-00003, 17-00004, 17-00098, which are cases involving the same imported merchandise and legal issue.

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1581(a), the civil action giving rise to this appeal was commenced in the Court of International Trade. The Trade Court published an opinion and entered a judgment on March 25, 2022.

This appeal is filed pursuant to 28 U.S.C. § 1295(a)(5), which grants the United States Court of Appeals for the Federal Circuit exclusive jurisdiction over appeals from final decisions of the Court of International Trade. This is an appeal from a final judgment that disposed of all the plaintiff-appellant's claims.

A notice of appeal was filed on May 13, 2022, within the time prescribed in Fed. Cir. R. 4 (a)(l)(B). The appeal was docketed on May 16, 2022.

## STATEMENT OF THE ISSUES

1. Is the imported merchandise composed of "woven, knitted, or crochet fabric" that is completely or entirely fixed in a surrounding mass of plastic such that it is "impregnated, coated, covered or laminated with plastic" and, if classifiable in Chapter 39, excluded from classification under tariff item 6116.10.5520, by Section XI, Note l(h) of the Harmonized Tariff Schedule of the United States ("HTSUS")?

2. Did the Court of International Trade err by holding that Section XI, Note 1(h) applies only to articles made from fabric that was impregnated, coated, covered, or laminated with plastic prior to being formed into its final shape?

## **STATEMENT OF THE CASE**

This is an appeal from the U.S. Court of International Trade's (hereafter "the Trade Court") denial of Plaintiff-Appellant's motion for summary judgment, and the grant of summary judgment to Defendant-Appellee United States (hereafter the "United States"). The imported products at issue are gloves composed of knit-to-shape shells of synthetic fibers that were dipped in polyurethane, resulting in a plastic coating on the palm and a portion of the fingers and thumb. Appx2.

United States Customs and Border Protection (hereafter "Customs") classified the gloves under HTSUS item 6116.10.5520, which covers, in relevant part:

> Gloves, mittens and mitts, knitted or crocheted: Impregnated, coated or covered with plastics or rubber: Other: Without Forchettes: Containing 50 percent or more by weight of cotton, man-made fibers or other textile fibers, or any combination thereof . . . .

Appx4. Merchandise classified in this tariff item is dutiable at a rate of 13.2% *ad valorem*.

Magid Glove & Safety Mfg. Co. LLC, the Plaintiff-Appellant, filed timely protests arguing that the gloves are classifiable under Subheading 3926.20.1050, HTSUS, which provides for:

> Other articles of plastics and articles of other materials of headings 3901 to 3914: Articles of apparel and clothing accessories (including gloves, mittens and mitts): Gloves, mittens and mitts: Seamless: Other: Other."

This is a duty-free provision. Appx32.

Customs denied the protest, Appx2, citing its Headquarters Ruling HQ H220278 (Mar. 30, 2012), which was published in *Customs Bulletin & Decisions* with the notice *Modification and Revocation of Ruling Letters and Revocation of Treatment Relating to the Tariff Classification of Polyurethane Coated Gloves*, 48 Cust. B. & Dec. 170 (Apr. 30, 2014) With that Notice, Customs purported to change the classification of polyurethane-coated gloves that have a textile shell and are similar in design and use to the gloves at issue in this appeal. In the process,

Customs revoked NYRL N013115 (Jul. 19, 2007) and modified NYRL N042821 (Nov. 21, 2008). Appellant challenged the denial of its protest by bringing a timely action at the Trade Court. Appx2.

Appellant moved for summary judgement, seeking reclassification of the gloves in HTSUS item 3926.20.1050 under the heading for "other articles of plastics." The United States cross-moved for summary judgment, seeking a judgment sustaining the denied protest. Appx3. The Trade Court upheld the classification in the judgment subject to this appeal. Appx19.

In the Trade Court, Judge Stanceu issued his decision in favor of defendant on March 25, 2022, holding that the imported gloves are properly classifiable as textile gloves under HTSUS item 6116.10.55. Appx19.

**A. Statement of Facts**

Appellant Magid Glove & Safety Mfg. Co. LLC ("Magid" or "Appellant"), is a manufacturer, importer, distributor, and direct supplier of hand protection, protective clothing, first aid, and personal protective equipment. Appx30. Magid imports an assortment of polyurethane-coated gloves made with a knit-to-shape textile shell. Appx30-31. Included in the Joint Appendix are specification sheets used by the Magid sales team to highlight the features and technical specifications of the gloves. The specifications describe each of the styles at issue in this appeal. Appx42-53.

The tables below summarize the composition of each style of glove; its standard rating for abrasion, puncture, and cut resistance; and a citation for that information. The higher the number, the more resistant the glove is to abrasion, puncture, and cut. Appx182. In addition, the plastic applied to the gloves improves dexterity and helps channel oil away from the wearer. Appx65-66.

| **Style** | **Knit Shell** | **Coating** | **Abrasion ANSI** | **Puncture ANSI** | **Cut ANSI** | **Citation** |
|---|---|---|---|---|---|---|
| BP169 | Polyester | Polyurethane | 4 | n/a | 1 | Appx42-43 |
| GP150 | Nylon | Polyurethane | 4 | 2 | 1 | Appx44-45 |

| | | | | | | |
|---|---|---|---|---|---|---|
| SWGPD546/ GPD546 | HPPE, Lycra, Polyester | Polyurethane | 3 | 6 | 2 | Appx46-47 |
| PF540 | HPPE | Polyurethane | 2 | 3 | 2 | Appx48-49 |
| SWGPD590/ GPD590 | HPPE, Glass Fiber | Polyurethane | 6 | 3 | A5 | Appx50-51 |
| PU50 | Nylon | Polyurethane | 3 | 2 | 0 | Appx52-53 |

Finally, Appellant has made a motion to this Court to have physical samples of the gloves previously filed with the Trade Court forwarded to this Court. The samples are not drawn from the entries covered by the protests at issue in this case. The gloves are, however, illustrative of the construction and coating of the merchandise.

The shells for the gloves were formed from yarn by knitting to shape on an industrial knitting machine. Appx210. The yarn is composed of synthetic fibers. Appx42-53. The gloves have closed fingertips and no seams. Appx15. Once out of the knitting machine, the shell is put on a "former," which is shaped like a human hand. Appx58. The shell then moves to a "dipping line" where the gloves are dipped in liquid polyurethane. Appx58. The polyurethane covers the palms and a portion of the fingers and thumb. Appx133-138.

Customs has classified palm-side coated gloves under item 3926.20.1050 of the Harmonized Tariff Schedule of the United States. For example, in NYRL N013115 (July 19, 2007) Customs held that where the fabric that makes up a glove

is coated with polyurethane on both the palm side as well as on the underside of the palm, thereby coating both sides with such material, the gloves are classified in chapter 39, HTSUS. Customs proposed to revoke this ruling in August of 2012, *46 Cust. B. & Dec. 38 (Aug. 22, 2012)*, and then revoked the ruling via HQ H220278 (April 1, 2014). *See also*, HQ H246529 (December 20, 2013) revoking NYRL N238691 (February 26, 2013). On April 30, 2014, Customs issued its Notice of Final Revocation changing the classification of polyurethane-coated gloves similar in design and use to Magid's imported gloves to HTSUS item 6116.10.5520. *See* 48 Cust. B. & Dec. 170 (Apr. 30, 2014). In that Notice, Customs detailed its inconsistent history of classifying gloves composed of a combination of plastic and textile fabric. *Id*. at 177.

The challenged classification is entitled to only the limited deference afforded under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) and this Court has an independent responsibility to determine the correct scope of the tariff terms. *MetChem, Inc. v. United States*, 513 F.3d 1342, 1345 (Fed. Cir. 2008) (quoting *Warner-Lambert Co. v. United States*, 407 F.3d 1207, (Fed. Cir. 2005)); *See also Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1355-56 (Fed. Cir. 2003).

Consistent with its Notice of Final Revocation, Customs liquidated the subject gloves under tariff item 6116.10.5520 and assessed duty at the rate of 13.2% *ad valorem*. Appx7. In its protest, Magid asserted that the correct

classification is under tariff item 3926.20.1050 which has an applicable rate of duty of free. Appx32.

## SUMMARY OF THE ARGUMENT

Appellant respectfully asserts that this Court should reverse in part and remand this case to the Trade Court for additional proceedings. There are two reasons for this. First, the Trade Court failed to apply the reasoning necessary to this Court's decision in *Kalle USA, Inc. v. United States*, 923 F.3d 991 (Fed. Cir. 2019). In *Kalle*, this Court had to define fabrics that are impregnated, coated, covered, or laminated with plastic for purposes of Section XI, Note 1(h), which states that the Section does not cover "[w]oven, knitted, or crocheted fabrics or nonwovens, impregnated, coated, overed or laminated with plastics, or articles thereof, of Chapter 39…." The Court reasoned that to be excluded the fabric and articles thereof must be "'completely' or entirely fixed in a surrounding mass of plastic" and, therefore, not made of fabrics of a kind that could be classified in Heading 5903. *Id.* at 996.

Despite complete briefing on *Kalle* and its impact on the classification of Magid's gloves, the Trade Court opted to ignore this Court's reasoning. Importantly, the lower court failed to make any factual findings with respect to whether the textile shells in the subject gloves are completely or entirely fixed in a surround mass of plastic. This error requires that the case be remanded for further

considerations and for a determination as to the degree to which the textile is fixed in a surrounding mass of plastic.

The Trade Court also erred when it adopted an interpretation of the legal notes that knitted "fabrics" and articles thereof excluded from Section XI by Note 1(h) must have been coated with plastic when the fabric was in a basic uncut or rectangular form prior to forming into their final shape. Appx16-17. This conclusion is not supported by the language of the tariff schedule. The Trade Court's addition of a temporal restriction on when the plastic is added to the fabric results in the absurd consequence that knit-to-shape gloves of Heading 6116 can never be excluded by Section XI, Note 1(h) regardless of the amount of plastic applied after knitting.

## ARGUMENT

### A. Standard of Review

The Trade Court erred in its interpretation of the tariff, and the application of the various tariff provisions at issue to the imported merchandise. This Court reviews the Trade Court's interpretations of law *de novo*. *See*, *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 924 (Fed. Cir. 2003); *Universal Elecs. v. United States*, 112 F.3d 488, 493 (Fed. Cir. 9 1997). In doing so, this court construes without deference to the trial court the relevant tariff provisions. *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1366 (Fed. Cir. 1988). The Trade Court also

determined under which tariff provision the imported merchandise falls, a factual finding that this Court reviews for clear error. *Id.*

### B. Tariff Classification Under the Harmonized Tariff Schedule of the United States

Goods entering the United States are subject to classification under the Harmonized Tariff Schedule of the United States ("HTSUS"), which is considered to contain "statutory provisions of law." 19 U.S.C. § 3004(c). The HTSUS is divided into headings that describe general categories of merchandise and subheadings that provide more detailed descriptions of merchandise within each heading. *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1366 (Fed. Cir. 2013).

Classification within the HTSUS is controlled by General Rules of Interpretation, Section Notes, Chapter Notes and other provisions having the effect of law. *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011). When determining the classification of merchandise, a reviewing court construes the language of the relevant headings "in light of any related section or chapter notes." *Id.* Finally, the Court may consider the non-binding but authoritative commentary of the *Explanatory Notes to the Harmonized System* published by the World Customs Organization. *Lemans Corp. v. United States*, 660 F.3d 1311, 1361 (Fed. Cir. 2011).

Tariff classification is a two-step process. In the first step, the Court determines the proper meaning of the tariff provisions at hand; this is a question of law. *Universal Elecs. v. United States*, 112 F.3d 488, 491 (Fed. Cir. 1997) (citing *Intel Sing., Ltd. v. United States*, 83 F.3d 1416, 1417-18 (Fed. Cir. 1996)). In the second step, the Court determined whether the subject merchandise falls within the scope of the possible headings; this is a question of fact, which the Court reviews for clear error. *Id*.

### C. The Court of International Trade Incorrectly Ignored this Court's Decision in Kalle USA, Inc. v. United States

In this case, the Trade Court erred when it ignored the reasoning of this Court in *Kalle*, which addressed the same provisions of the HTSUS. In that case, this Court considered whether meat casings made of both textile material and plastic were excluded from classification in HTSUS Section XI by virtue of Section XI, Note 1(h). *Id.* at 994.

The Trade Court classified the casings in HTSUS Heading 6307, which falls in Section XI as does Heading 6116. However, Section XI, Note 1(h) states that "This section does not cover . . . [w]oven, knitted or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics, or articles thereof, of chapter 39."[1] At the same time, "[g]oods of Section XI" are excluded

---

[1] The relevant sections of the HTSUS are included in the Joint Appendix at Appx280-319.

from Chapter 39 by Note 2(p) to that Chapter. Because the casing was comprised of both textile and plastic, this Court looked to Chapter 59 to determine the meaning of the phrase “fabrics . . . impregnated, coated, covered or laminated with plastics” and, whether the casing should be excluded from Section XI. *Kalle,* 923 F.3d at 994.

Turning to the Notes to Chapter 59, this Court focused on Note 2(a)(3), which states that the Heading 5903 **applies to** “[t]extile fabrics, impregnated, coated, covered or laminated with plastics” but that Heading 5903 **does not apply** to "[p]roducts in which the textile fabric is either **completely embedded in plastics** or entirely coated or covered on both sides with such material." *Id.* at 994. (emphasis added). A critical question in *Kalle*, therefore, was whether the casing was “completely embedded in plastics.” *Id*. If so, it would not be “impregnated, coated, covered or laminated” within the meaning given in Chapter 59. Such goods, if of Chapter 39, would be excluded from Section XI by the operation of Section Note 1(h). *Id.* at 994-95.

After carefully analyzing the relevant text, this Court found that for a fabric that has been combined with plastic to be “completely embedded in plastic,” the fabric had to be “‘completely’ or entirely fixed in a surrounding mass of plastic.” *Id. at* 996. Importantly, the Federal Circuit panel also stated that “We disagree with

the government that this requires every surface of the fiber to be fixed and surrounded by a mass of plastic." *Id.*

The gloves subject to this appeal are composed of fabric shells to which plastic has been applied. Appx4-5. Appellant does not assert that the subject gloves are "entirely coated or covered on both sides" with plastic. The controlling question, therefore, is whether the plastic that is present on the palms, fingers, and thumbs is sufficient to exclude the gloves from Section XI and allow them to be classified in Chapter 39. The factual determination necessary to reach that decision is whether the fabric portion of the gloves is "completely embedded" in plastic such that it would be excluded from Heading 5903 by Chapter 59, Note 2(a)(3). As indicated by the parenthetical at the end of that Note, such goods are to be classified in Chapter 39.

The Trade Court did not address that question of fact. This was an error. According to the Supreme Court, when an opinion issues from the Court, it is not only the result but also those portions of the opinion **necessary to that result** by which the Court is bound in subsequent cases. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996). This Court has cited *Seminole* as establishing a requirement that it apply the Supreme Court's reasoning to its consideration of cases raising the same issues when that reasoning was necessary to the outcome of the Supreme Court decision. *DaimlerChrysler Corp. v. United States*, 361 F.3d

1378, 1385 (Fed. Cir. 2004). Moreover, even if the relevant statement is *obiter dicta*, the lower court should follow the explicit and carefully considered understanding of the law expressed by a superior court. *Id.* at 1385 n.3.

As an inferior Court, the Court of International Trade should have applied the analysis this Court mapped out in *Kalle*. A necessary component of that analysis was the factual determination of whether the casings were completely or entirely fixed in a surrounding mass of plastic and, therefore, completely embedded in plastic. If so, the gloves would be excluded from Section XI if classifiable in Chapter 39.

In the absence of a necessary factual determination, this Court may remand the case to the Trade Court to make the missing determination. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)("If the Court of Appeals believed that the District Court had failed to make findings of fact essential to a proper resolution of the legal question, it should have remanded to the District Court to make those findings."). That is the approach this Court has taken in prior classification cases including *GRK Can. Ltd. v. United States*, 761 F.3d 1354, 1361 (Fed. Cir. 2014)(classification remanded for consideration of evidence of use) and *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1369 (Fed. Cir. 2011)(classification remanded for consideration of evidence of essential character).

Appellant notes that the application by the Trade Court of a note to Chapter 59 to classify merchandise most likely classified in Chapters 39 or 61 is problematic. Appx13, n.6. Chapter 59, Note 2 expressly limits its application to setting the scope of Heading 5903 by commencing "Heading 5903 applies to . . . ." Moreover, General Rule of Interpretation (GRI) 1 of the Harmonized Tariff Schedule of the United States provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes" and, when needed, the other GRI. Rather than treat the Chapter 59, Note 2(a)(3) as applicable only to the heading it explicitly references, the Trade Court applied the Chapter Note to determine the scope of a tariff term in Chapter 61. Appx13-14. This effectively, and improperly, converts a Chapter Note of limited scope into a Section Note, which is applicable to all headings in Section XI.

However, as discussed above, the Federal Circuit applied a similar analysis in *Kalle* and, absent a decision to overrule *Kalle*, that reasoning should apply here. Consistent with Federal Circuit Rule 35, overturning *Kalle* can only be done by the Court sitting *en banc*. Pursuant to Rule 35(a) , Appellant suggests that the panel consider whether to ask the active service judges to consider hearing this matter *en banc*.

This is a meaningful request. Without the application of Note 2(a)(3) to Chapter 59, the standard to be applied to determine whether the subject gloves are

excluded from Section XI is simply whether they are “impregnated, coated, covered, or laminated with plastics” per Section XI, Note 1(h). This is a lower standard than “completely embedded or entirely coated on both sides” as required for exclusion from Chapter 59 per Note 2(a)(3). If under this test, the gloves are excluded from Section XI, they are not excluded from Chapter 39 by Note 2(p) to that chapter.

Moreover, the *Explanatory Notes to the Harmonized System*, Section XI, at Note 11, provide that “For purposes of this Section, the expression ‘impregnated’ includes ‘dipped.’” The subject plastic dipped gloves are “impregnated” by this definition and arguably excluded from Section XI. By importing the stricter standard from Chapter 59, *Kalle* frustrates the express meaning of Section XI, Note 1(h) and the authoritative commentary of the Explanatory Notes.

### D. The Court of International Trade Incorrectly Concluded that Section XI, Note 1(h) Applies only to Fabric Treated with Plastic when in Basic Uncut or Rectangular Form

The Trade Court’s analysis of Section XI, Note 1(h) started from the premise that the Note “would appear to exclude from the scope of heading 6116, HTSUS gloves that were made up of a pre-existing fabric of heading 3921, *e.g.*, gloves that were cut from such a fabric and subsequently assembled into complete gloves.” Appx14. However, according to the Trade Court, because Appellant’s glove shells were completely knit-to-shape when dipped into polyurethane plastic, “there was

no longer a product that could be described as a 'fabric,' *i.e.*, a material, and had become an article, *i.e.*, a glove-shaped shell." *Id.* at 17.

The Trade Court's analysis is incorrect for several reasons. First, it is based on an application of Chapter 39, Note 10. That Note unambiguously applies only in the limited circumstances of defining "plates, sheets, film, foil and strip" of Headings 3920 and 3921. While it is true that articles of Heading 3926 must be "other articles of plastics" or "articles of other materials of headings 3901 to 3914, goods of Heading 3926 do not have to be composed of plates, sheets, or other materials of Headings 3920 or 3921. The subject gloves are not any of those materials. They are articles of apparel that have been dipped in plastic that Appellant asserts are properly classified in Heading 3926 as "Other articles of plastics," "Gloves." Chapter 39, Note 10 is simply irrelevant to the question that was presented to the Trade Court.

Second, the Trade Court's conclusion that Section XI, Note 1(h) only applies to products made of pre-existing plastic-treated fabric adds a temporal limitation to the Note that is not present in the text. This is an impermissible reading of the HTSUS. When the text does not include a limitation, the Court should not insert one. For example, in *Archer Daniels Midland Co. v. United States*, 561 F.3d 1308, 1315 (Fed. Cir. 2009), the Government sought to apply the Explanatory Notes to limit the scope of a heading for residual chemical products. Rejecting that position,

this Court held that “Because ‘residual products’ cannot reasonably be construed to be limited to the four or five products listed in the Explanatory Note, we reject the government’s argument that the Explanatory Note may be given controlling weight and used to narrow the ordinary meaning of the term “residual products.’” *See also, Well Luck Co. v. United States*, 887 F.3d 1106, 1113 (Fed. Cir. 2018). In this case, there is even less basis on which to find the limitation the Trade Court imposed, and this should also be rejected.

Finally, the Trade Court stated, “plaintiff's interpretation of note 1(h) to section XI, HTSUS is not implausible when the note is read in isolation. Note 1(h) arguably could be construed broadly to apply even to articles, such as gloves, to which a plastic coating is applied after the article is knitted, in the sense that the plastic is applied to a portion of the knitted article that could be considered to be ‘fabric’ of the glove.” Appx15. Rather than being merely plausible, this is the correct reading of the Note.

One indication that the gloves are made of knit fabric is that in Customs’ revocation decision in HQ 220278 (April 1, 2014), the agency makes it clear that it considers knit-to-shape gloves to be composed of fabric. Customs described the gloves at issue in that ruling as partially “composed of non-coated **textile fabric**.” (Emphasis added.) Later, Customs stated that it is “meaningless to say that the **textile fabric** is reinforcing the plastic coating.” (Emphasis added.) Further, as

Appellant noted in its brief to the Trade court, "fabric" refers to, among other things, "Any cloth produced by joining fibers as by knitting, weaving, or felting." *The American Heritage Dictionary of the English Language*, 468 (New College ed. 1975). "Knit goods," are "loose fabrics, elastic both ways, made of one or more continuous threads interlaced with itself and forming rows of loops holding each other but not tied." *Dictionary of Textiles* 99 (1st ed. 1915)(emphasis added). *Brief of Petitioner-Appellant* at 10, Magid Glove & Safety Mfg. Co. LLC v. United States, 2022 Ct. Intl. Trade LEXIS 26 (No. 16-00150).

Throughout the course of this litigation, no question has been raised to the fact that the shells in the subject merchandise are knit products, produced on a knitting machine. The Trade Court accepted this as a fact. Appx4-5. It follows that the shells are composed of knit fabrics manufactured in the shape of a glove that have been dipped in polyurethane. This is evident from the simple thought experiment of asking whether under the Trade Court's analysis Section XI, Note 1(h) would apply to a square of the coated palm cut from glove. Appellant contents that it would. Moreover, the Trade Court's analysis leads to the absurd result that such a swatch would be excluded from Section XI but that pre-existing knit-to-shape shell that is wholly coated and impregnated in plastic on all sides is not. In effect, the Court of International Trade has held that the Section XI, Note 1(h) will never exclude any knit-to-shape and plastic coated shells regardless of the amount

of plastic applied to it because the plastic is applied after the shell has been formed. Nothing in the text of the relevant HTSUS provisions requires that result.

## CONCLUSION

For these reasons, Appellant respectfully requests that this Court reverse the decision of the Court of International Trade holding that Section XI, Note 1(h) excludes from that Section only products manufactured from uncut or basic rectangular forms of knit fabrics that were coated or otherwise treated with plastic prior to assembly into their finished form. Appellant also respectfully requests that this Court remand the case back to the Trade Court with instructions that the Court determine whether the knit glove shells are "completely embedded" in plastic as that phrase was construed in *Kalle USA, Inc. v. United States* and ordering further proceedings in conformity with decision.

Respectfully submitted,

*/s/ Lawrence Friedman*

Lawrence Friedman
(lfriedman@barnesrichardson.com)
BARNES, RICHARDSON &
COLBURN LLP
303 East Wacker Drive
Suite 305
Chicago, Illinois 60601
(312) 565-2000

*Counsel for Magid Glove & Safety Manufacturing Co. LLC*

# ADDENDUM

## TABLE OF CONTENTS TO ADDENDUM

Opinion (Docket No. 57), filed 3/25/22 ........................................................ Appx1

**Slip Op. No. 22-28**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **MAGID GLOVE & SAFETY MANUFACTURING CO. LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | **Before: Timothy C. Stanceu, Judge**<br><br>**Court No. 16-00150** |

**OPINION**

[Granting defendant's cross motion for summary judgment in an action involving the tariff classification of certain imported gloves.]

Dated: March 25, 2022

*Lawrence M. Friedman*, Barnes, Richardson & Colburn, LLP of Chicago, IL, for plaintiff. With him on the brief were *Meaghan E. Vander Schaaf* and *Robert E. Burke*.

*Marcella Powell*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With her on the brief were *Aimee Lee*, Assistant Director, *Brian M. Boynton,* Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Justin R. Miller*, Attorney-In-Charge, International Trade Field Office. Of counsel on the brief was *Paula Smith*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Stanceu, Judge: Plaintiff Magid Glove & Safety Manufacturing Co. LLC ("Magid") commenced this action to contest the denial of its administrative protest by U.S. Customs and Border Protection ("Customs" or "CBP"). Magid claims that

Customs incorrectly determined the tariff classification of certain imported gloves. Before the court are cross-motions for summary judgment. The court awards summary judgment in favor of defendant United States.

## I. Background

This case involves gloves imported from the People's Republic of China and the Republic of Korea, each of which consists of a glove-shaped "shell" knitted from man-made fibers that, after the knitting process, is dipped in polyurethane, which forms a flexible plastic layer covering the palm and portions of the thumb and fingers of each glove. Prior to the dipping process, the shell is in the shape of a complete glove, i.e., it is knitted from yarn directly to a shape that covers the entire hand. Mot. For Summ. J. Ex. B, at 12–13 (Mar. 22, 2021), ECF No. 44-4 (deposition testimony of Gary Cohen dated Oct. 2, 2020) ("Pl.'s Ex. B").

Magid was the importer of record on two entries of the merchandise, made at the Port of Chicago in January 2015. Following liquidation of the two entries on November 20, 2015, Magid filed a protest of the liquidations on February 8, 2016, which Customs denied on March 1, 2016. Summons (Aug. 12, 2016), ECF No. 1. Magid initiated the instant action to contest the protest denials on August 12, 2016. *Id.*

Magid filed a motion for summary judgment with accompanying brief on March 22, 2021. Mot. For Summ. J., ECF No. 44; Mem. in Supp. of Pl.'s Mot. for Summ. J., ECF No, 44-1 ("Pl.'s Mot."). Defendant filed a cross motion for summary judgment

and opposition to plaintiff's motion for summary judgment on June 14, 2021. Def.'s Cross Mot. for Summ. J., ECF No. 50; Def.'s Mem. in Supp. of its Cross Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 50 ("Def.'s Mot.").

On July 19, 2021, plaintiff filed a response to defendant's cross motion for summary judgment and reply to defendant's opposition to plaintiff's motion for summary judgment. Pl.'s Resp. to Def.'s Cross Mot. for Summ. J. and Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J., ECF No. 51 ("Pl.'s Resp."). Defendant replied in support of its cross motion on September 17, 2021. Reply Br. in Further Supp. of Def.'s Cross Mot. for Summ. J., ECF No. 56.

## II. Discussion

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction according to 28 U.S.C. § 1581(a), which provides the Court of International Trade exclusive jurisdiction of a civil action commenced under section 515 of the Tariff Act of 1930 ("Tariff Act"), *as amended*, 19 U.S.C. § 1515, to contest the denial of a protest.[1]

Actions to contest the denial of a protest are adjudicated *de novo*. *See* 28 U.S.C. § 2640(a)(1) (directing the Court of International Trade to "make its determinations upon the basis of the record made before the court"). The court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact

[1] Citations herein to the United States Code are to the 2012 edition.

and the movant is entitled to judgment as a matter of law." CIT Rule 56(a). In a tariff classification dispute, summary judgment is appropriate where "there is no genuine dispute as to the nature of the merchandise and the classification determination turns on the proper meaning and scope of the relevant tariff provisions." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1371 (Fed. Cir. 2013) (citations omitted).

**B. Description of the Merchandise**

The facts stated in this Opinion and Order as to the description of the merchandise are not in dispute. *See* R. 56.3 Statement of Material Facts as to which There is No Genuine Issue to Be Tried (Mar. 22, 2021), ECF No. 44-2; Def.'s Statement of Material Facts as to which There is No Genuine Issue to be Tried at 4 (June 14, 2021), ECF No. 50 ("Def.'s Statement of Material Facts").

This case involves the tariff classification of eight models of gloves (models BP169, GP150, SWGPD546, GPD546, PF540, SWGPD590, GPD590, and PU50). Pl.'s Mot. 3–4. The shell of each glove is "knit to shape on an industrial knitting machine" and is "made of man-made fibers." *Id*. at 4. Six of the models have shells knitted exclusively from man-made textile fibers (variously, polyester, nylon, high-performance polyethylene ("HPPE") lycra, tsunooga, and spandex). *Id*. Two models (SWGPD590 and GPD590) are made of 91% man-made textile fiber and 9% glass fiber. *Id*. After being knitted to shape on the knitting machine, each shell is further processed by being dipped in liquid polyurethane, which, as shown by the samples provided to the court,

has solidified into a flexible plastic coating that covers the palms and portions of the fingers and thumb.[2] *Id*. at 4–5; samples. The gloves are "specially designed and marketed for use in the automotive, metal stamping, and other industrial and commercial settings." Pl.'s Mot. at 6.

**C. Tariff Classification under the HTSUS**

Tariff classification under the Harmonized Tariff Schedule of the United States ("HTSUS") is governed by the General Rules of Interpretation ("GRIs"), and, if applicable, the Additional U.S. Rules of Interpretation, both of which are part of the legal text of the HTSUS. The GRIs are applied in numerical order, with GRI 1 providing that "classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes." GRI 1, HTSUS. GRIs 2 through 5 apply "provided such headings or notes do not otherwise require." *Id*. After determining the correct heading, a court determines the correct subheading according to GRI 6, HTSUS

[2] While plaintiff indicates that model BP 169 varies from the other models in being coated with a mixture of 75% polyester and 25% polyurethane, Mem. in Supp. of Pl.'s Mot. for Summ. J. at 4 (Mar. 22, 2021), ECF No. 44-1 ("Pl.'s Mot."), other of plaintiff's statements of fact inform the court that the coating on model BP 169 consists of 100% polyurethane. *Id.* at 3 (indicating that coating on model BP 169 is polyurethane); Mot. for Summ. J. Ex. A, at A002 (Mar. 22, 2021), ECF No. 44-3 (product specification sheet for BP169 describing the product as being composed of "100% polyester shell; 100% polyurethane palm coating"). The court considers each model at issue to have been dipped solely in polyurethane. Pl.'s Mot at 4–5 ("The glove then moves to a 'dipping line' where the gloves are dipped in liquid polyurethane.") (citation omitted). However, even if model BP 169 varied from the others in being coated with a mixture of 75% polyester and 25% polyurethane, that difference would have no bearing on the court's classification analysis.

(directing determination of the subheading according to the terms of the subheadings and any related subheading notes, and GRIs 1-5 as applied at the subheading level, mutatis mutandis); *see Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998).

"Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings." *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) (quoting *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999)). When interpreting the HTSUS, the court "may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Carl Zeiss*, 195 F.3d at 1379 (citing *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999)).

The court also consults the Explanatory Notes ("ENs") for the Harmonized Commodity Description and Coding System ("Harmonized System" or "HS") maintained by the World Customs Organization. Although not legally binding, the ENs "are generally indicative of the proper interpretation of a tariff provision." *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (citing *Motorola, Inc. v. United States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006)). HTSUS provisions are based on the Harmonized System rules and nomenclature (pursuant to the Harmonized System Convention) with respect to the GRIs, the section and chapter notes, and the headings and subheadings to the six-digit level. Therefore, the Explanatory Notes are

informative as to the intent of the drafters of the Harmonized System where, as here, the dispute involves a legal determination of the scope of the competing headings as determined under the GRIs and the section and chapter notes.

In cases involving a tariff classification dispute, the court first considers whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). Plaintiff has the burden of showing that the government's determined classification is incorrect. *Id*. at 876. If plaintiff meets that burden, the court has an independent duty to arrive at "the correct result, by whatever procedure is best suited to the case at hand." *Id*. at 878.

**D. Claims of the Parties**

Upon liquidation, Customs classified the imported articles in subheading 6116.10.55, HTSUS ("Gloves, mittens and mitts, knitted or crocheted: Impregnated, coated or covered with plastics or rubber: . . . Other: Without fourchettes: . . . Other: Containing 50 percent or more by weight of cotton, man-made fibers or other textile fibers, or any combination thereof"), subject to duty at 13.2% *ad valorem*.[3] Summons 2.

Plaintiff claims classification in subheading 3926.20.10, HTSUS ("Other articles of plastics and articles of other materials of headings 3901 to 3914: . . . Articles of apparel

---

[3] Because the entries of the merchandise at issue occurred in 2015, citations herein to the Harmonized Tariff Schedule of the United States ("HTSUS") are to the 2015 version.

and clothing accessories (including gloves, mittens and mitts): . . . Gloves, mittens and mitts: Seamless"), free of duty. Pl.'s Mot. 7–9.

Defendant claims that the classification determined by Customs upon liquidation is correct. Def.'s Mot. 1.

**E. Application of GRI 1, HTSUS to Determine the Appropriate Heading**

The candidate headings of the HTSUS identified by the parties, in numerical order and presented with the respective article descriptions, are as follows:

| | |
|---|---|
| Heading 3926 | "Other articles of plastics and articles of other materials of headings 3901 to 3914" |
| Heading 6116 | "Gloves, mittens and mitts, knitted or crocheted" |

The court has identified no other candidate headings.[4]

For purposes of GRI 1, the terms of heading 3926 do not describe Magid's imported gloves because, while comprised in part of a plastic material (polyurethane), the gloves are not "of plastics" or of other materials of headings 3901 to 3914 (which pertain to various plastics and similar substances in primary forms). Also, note 2(p) to

[4] The court concludes that the presence of 9% glass fiber in the shells of models SWGPD590 and GPD590 is insufficient to result in classification in a heading of chapter 70, Glass and Glassware (a classification neither party argues). An examination of a sample of model GPD590 and the presence of 91% textile fiber content cause the court to conclude that these gloves do not have the character of articles of glass fiber. *See* n. 1(r) to sec. XI, HTSUS (excluding from section XI "[g]lass fibers or articles of glass fibers . . ."); *see also* EN(d) to sec. XI (explaining that the exclusion from Section XI applies also to "composite articles made of glass fibres and textile fibres having the character of articles of glass fibres (Chapter 70)").

chapter 39, HTSUS excludes from that chapter "[g]oods of section XI (textile and textile articles)."

The article description for heading 6116, HTSUS, "Gloves, . . . knitted," describes the merchandise at issue. *See* Pl.'s Mot. 4 ("The *knit gloves* are made of man-made fibers" and "are *knit to shape* on an industrial knitting machine.") (citations omitted) (emphases added). Plaintiff disagrees that a term of heading 6116 is descriptive of its gloves: "A simple examination of the samples submitted to the Court shows that the Government's position ignores that the knitted textile component of Heading 6116 only describes a portion of the glove." Pl.'s Resp. 11. According to Magid, "[t]his coating is a critical component of the gloves and distinguishes the gloves from uncoated textile gloves encompassed by Heading 6116," and "[a]s the gloves are composed of two or more materials, they cannot be classified under GRI 1." *Id*.

The issue presented by plaintiff's argument is whether the presence of the plastic coating on the palm and portions of the fingers and thumb of each glove is sufficient, *per se*, to exclude these articles from heading 6116, HTSUS. Relevant to that question is an Explanatory Note to chapter 61, as follows:

> The classification of goods in this Chapter [61] is not affected by the presence of parts or accessories of, for example, woven fabrics, furskin, feathers, leather, plastics or metal. Where, however, the presence of these materials constitutes **more than mere trimming** the articles are classified in accordance with the relative Chapter Notes (particularly Note 4 to Chapter 43 and Note 2(b) to Chapter 67, relating to the presence of furskin and feathers, respectively), or failing that, according to the General Interpretive Rules.

General EN to ch. 61. It is uncontested that the plastic coating is not mere trimming. It covers a significant portion of the glove and adds functional characteristics. *See* Pl.'s Mot. 5–6 & documents cited therein. Were it mere trimming, that fact would be conclusive in requiring classification under heading 6116, HTSUS. But the fact that it is not mere trimming does not conclusively establish the opposite, i.e., that the gloves at issue are *not* classified in heading 6116; it means only that the court should look to the relative chapter notes and the GRIs to resolve the issue of whether the plastic coating excludes the gloves from the intended scope of heading 6116. The court finds no other relative chapter notes and proceeds to apply the GRIs to resolve the question presented. The importance GRI 1 attaches to the terms of the headings provides the answer.

The General Explanatory Note to Chapter 61 applies generally to the goods of the chapter, whereas another Explanatory Note is exclusive to gloves. Explanatory Note 61.16, which the court views as indicative of the intent of the drafters of the Harmonized System as to the meaning of the terms of HS heading 61.16, instructs that "[t]his heading covers *all* knitted or crocheted gloves . . ." EN 61.16 (emphasis added). Even more significant, this Explanatory Note contemplates that knitted or crocheted gloves to which non-knitted components have been attached still would be described by the common and commercial term "knitted or crocheted gloves," within the meaning of that term as used by the drafters of the Harmonized System. *See id*. (instructing that the heading excludes "*[k]nitted* or crocheted *gloves*, mittens and mitts

lined with furskin or artificial fur, or with furskin or artificial fur on the outside (**other than** as mere trimming) (**heading 43.03** [. . . 'articles of furskin'] **or 43.04** ['artificial fur and articles thereof'])") (emphasis added). The court reasonably may infer from the wording of this exclusion that a glove can have as a component on the outside surface or the lining a material that is not a knitted material yet still be described by the general term "knitted glove." Moreover, in expressly excluding from the scope of the heading knitted gloves with attached furskin or artificial fur that is not mere trimming, the note does not similarly exclude knitted gloves that have been impregnated or coated with a layer of plastic, whether or not the layer is present as mere trimming. In all these respects, EN 61.16 evidences an intent on the part of the HS drafters that the heading term "Gloves, . . . knitted or crocheted" includes as a general matter those to which a non-knitted component, such as a plastic layer, has been affixed, even if that non-knitted component is more than mere trimming. In summary, the subject gloves are described by the term of heading 6116, "Gloves, . . . knitted" for purposes of GRI 1 and, therefore, fall within the scope of that heading of the HTSUS.

GRI 1 gives equal priority to the terms of the headings and "any relative Section or Chapter Notes." GRI 1, HTSUS. In that respect, plaintiff argues that the scope of heading 6116, which is located within section XI, HTSUS, is limited so as to exclude its imported gloves. According to Magid, "Section XI, Note 1(h) expressly excludes from that Section 'woven, knitted or crocheted fabrics, felt or nonwovens, **impregnated,**

**coated, covered** or laminated with plastics, or articles thereof' (emphasis added) and indicates that they are to be classified in Chapter 39." Pl.'s Mot. 16. The court disagrees.

Plaintiff's paraphrase of note 1(h) to section XI, HTSUS misquotes and misinterprets the text. The actual text is as follows: "This section does not cover . . . Woven, knitted or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics, or articles thereof, *of chapter 39*." N. 1(h) to sec. XI, HTSUS (emphasis added).

As signified by the overall context and the placement of the comma following the word "thereof," the prepositional phrase "of chapter 39" modifies and limits the term "[w]oven, knitted or crocheted fabrics . . . impregnated, coated, covered or laminated with plastics" (as well as the term "articles thereof"). According to its express terms, and as applied to the facts of this case, note 1(h) to section XI, HTSUS would exclude the gloves at issue from heading 6116, HTSUS only if they are "articles" *of* "knitted . . . fabrics . . . impregnated, coated, covered or laminated . . . with plastics," and only if those fabrics are classified within chapter 39, HTSUS. As discussed below, the court concludes that the gloves in question are not such articles.

A heading within Chapter 39, HTSUS would include within its scope some products in the form of sheets or film that are combinations of plastics and textiles and that could be described as "fabrics." Heading 3920 thereof includes plastics in the form

of sheets or film that are "not reinforced, laminated, supported or similarly combined with other materials," and, in contrast, the subsequent heading, heading 3921, encompasses products in sheet (or film) form that *are* combinations of plastics and other materials.[5] *See* heading 3921, HTSUS ("*Other* plates, sheets, film, foil and strip, of plastics"); *see also* EN 39.21 ("This heading covers plates, sheets, film, foil and strip, of plastics **other than** those of heading . . . 39.20."). By its terms, heading 3921, HTSUS includes some plastic sheet or film products that have a textile component and could be described as "fabrics." But the HTSUS treats this limited class of goods as plastic sheet or film, despite the presence of a textile component, rather than as "textiles" or "textile fabrics," which, as a general matter, are not within the scope of chapter 39, even if containing a component of plastic. *See* n. 2(p) to ch. 39, HTSUS (excluding from chapter 39 "[g]oods of section XI (textiles and textile articles)."[6]

---

[5] Two other headings within chapter 39, HTSUS include rolls or sheets but are not pertinent here. Heading 3918, HTSUS includes plastic coverings for floors (whether or not self-adhesive) and plastic coverings for walls and ceilings, and heading 3919, HTSUS covers other plastic self-adhesive products. Therefore, heading 3921 is the only heading of chapter 39, HTSUS that could include a plastic-textile combination relevant to a classification analysis for the merchandise at issue in this litigation.

[6] *See also* n. 1 to ch. 59, HTSUS (instructing that "[e]xcept where the context otherwise requires, for the purposes of this chapter [59] the expression '<u>textile fabrics</u>' applies only to the woven fabrics of chapters 50 to 55 and headings 5803 and 5806, the braids and ornamental trimmings in the piece of heading 5808 and the knitted or crocheted fabrics of headings 6002 to 6006."). In contrast, certain fabrics that are combinations of plastic and textile components are classified within chapter 39 rather than as "textile fabrics" of chapter 59; these expressly are excluded from the scope of (continued . . .)

Thus, the question presented by note 1(h) to section XI, HTSUS is whether the gloves at issue can be described as "articles" of "knitted . . . fabrics . . . impregnated, coated, covered or laminated with plastics" [in this case, polyurethane], of chapter 39. N. 1(h) to sec. XI, HTSUS. Note 1(h) would appear to exclude from the scope of heading 6116, HTSUS gloves that were made up of a pre-existing fabric of heading 3921, e.g., gloves that were cut from such a fabric and subsequently assembled into complete gloves. That, of course, is not the merchandise at issue in this case. Here, the unfinished glove is dipped in polyurethane *after* the completion of the knitting process. This case, therefore, presents an issue of statutory interpretation: Is note 1(h) to section XI, HTSUS properly interpreted more broadly to encompass, as well, a knitted glove that was "impregnated, coated, covered or laminated" with plastic *after* the knitting process of the article was complete?

Note 1(h) to section XI, HTSUS applies both to fabrics and to articles of those fabrics. To accept plaintiff's interpretation of note 1(h) to section XI, HTSUS, the court would need to interpret the note to exclude from section XI even those articles, such as the gloves at issue, that were not produced from a pre-existing knitted fabric (and, in particular, not produced from a plastic sheet containing a knitted textile component, of

---

(. . . continued)

heading 5903, HTSUS ("Textile fabrics impregnated, coated, covered or laminated with plastics, other than those of heading 5902 ["tire cord fabric . . ."]). *See* n. 2(a) to ch. 59, HTSUS.

heading 3921, HTSUS) but instead were knitted directly from yarn to the form of an unfinished glove. According to plaintiff:

> The knit gloves are made of man-made fibers. . . . The gloves have closed fingertips and no seams. . . . The textile component of the glove is complete when it comes off the machine. . . . Once the glove comes out of the knitting machine, it is put on a 'former,' which is shaped like a human hand. . . . The glove then moves to a 'dipping line' where the gloves are dipped in liquid polyurethane.

Pl.'s Mot. 4–5. *See* Pl.'s Ex. B, at 12 (describing the computer-controlled knitting process producing the finished shell directly from yarn.)

By the time the knitting process for one of Magid's gloves was complete, the result was no longer a product that could be described as a "fabric," i.e., a material, and had become an article, i.e., a glove-shaped shell. Even so, plaintiff's interpretation of note 1(h) to section XI, HTSUS is not implausible when the note is read in isolation. Note 1(h) arguably could be construed broadly to apply even to articles, such as gloves, to which a plastic coating is applied *after* the article is knitted, in the sense that the plastic is applied to a portion of the knitted article that could be considered to be "fabric" of the glove. Under such a reading, the finished, coated glove arguably could qualify as an article "of" a knitted "fabric" that has been coated with plastic at the end of the manufacturing process. Nevertheless, the court concludes that this broader interpretation of note 1(h) cannot be correct.

GRI 1 requires consideration of all "relative" section and chapter notes. The knitted "fabrics" that fall within chapter 39, HTSUS and that, therefore, could be

described by note 1(h) to section XI are expressly limited by note 10 to chapter 39, HTSUS, and the court may not consider the former without also considering the latter. Under note 10 to chapter 39, HTSUS, the knitted fabrics must be in uncut or basic rectangular form and thus cannot be in more complex shapes. Specifically, the note provides that "[i]n headings 3920 and 3921, the expression 'plates, sheets, film, foil and strip' applies only to plates, sheets, film, foil and strip (other than those of chapter 54) and to blocks of regular geometric shape, whether or not printed or otherwise surface-worked, uncut or cut into rectangles (including squares) but not further worked (even if when so cut they become articles ready for use)."[7] N. 10 to ch. 39, HTSUS; *see* EN 39.21 ("According to Note 10 to this Chapter, the expression 'plates, sheets, film, foil and strip' applies only to plates, sheets, film, foil and strip and to blocks of regular geometric shape, whether or not printed or otherwise surface-worked (for example, polished, embossed, coloured, merely curved or corrugated), uncut or cut into rectangles (including squares) but not further worked (even if when so cut they become articles ready for use).").

In summary, the knitted "fabrics" described by note 1(h) to section XI, in order to be considered fabrics of chapter 39, not only must be "impregnated, coated, covered or laminated with plastics," they also must be in basic uncut or rectangular form. An

[7] The reference to "chapter 54," which in headings 5407 and 5408 include only woven, not knitted, fabrics, is not relevant here.

article knitted directly from yarn to an advanced shape such as a glove cannot correctly be said to be of such a fabric. Because "[t]he textile component of the glove is complete when it comes off the [knitting] machine," Pl.'s Mot. 4 (citation omitted), Magid's gloves are not "of" a fabric of chapter 39, and note 1(h) to section XI, HTSUS does not exclude them from the scope of heading 6116, HTSUS. Plaintiff's reliance on note 1(h) to section XI, HTSUS to support its classification position is, therefore, misplaced.

In arguing that its gloves were classified incorrectly by Customs under heading 6116, HTSUS, Magid also argues that "[t]he gloves are *prima facie* classifiable in two Headings: 3926 ('Other articles of plastics . . .') and 6116 ('Gloves, mittens and mitts, knitted or crocheted')." Pl.'s Mot. 11–12. Plaintiff's analysis then applies GRIs 2(b) and 3(b) to conclude, for purposes of GRI 2(b), that "each Heading references a material or substance—knitted or crocheted textiles of 6116 and plastics of 3926—and must be taken to include a ref[er]ence to combinations of that material with other materials." *Id*. Then, relying on the directive in GRI 2(b) that "[t]he classification of goods consisting of more than one material or substance shall be according to the principles of rule 3," plaintiff argues that the gloves are "composite goods" within the meaning of GRI 3(b) and must be classified thereunder "as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable." *Id*. at 12–13 (quoting GRIs 2(b) and 3(b), HTSUS). Magid views the essential character as imparted by the layer of plastic (i.e., the polyurethane resulting from the dipping

process), resulting in classification within chapter 39, and specifically in heading 3926, HTSUS as an article of plastic.

In directing that classification is determined according to the terms of the headings and any relative section and chapter notes, GRI 1 allows application of GRIs 2 through 5 only "provided such headings or notes *do not otherwise require*." GRI 1, HTSUS (emphasis added). Here, the terms of the competing headings *do* otherwise require. Because a term within the article description for heading 6116, HTSUS describes the gloves at issue in this litigation, because these gloves are not described by a term within the competing heading 3926, HTSUS, because no other heading merits consideration, and because no section or chapter note of the HTSUS requires otherwise, heading 6116, HTSUS is the correct heading by operation of GRI 1. And because GRIs 2 through 5 apply only if the terms of the headings and the relative section and chapter notes do not otherwise require, plaintiff's contrary argument that classification should be determined according to GRI 3(b) based on "essential character" is not correct.

**F. Application of GRI 6, HTSUS to Determine the Correct Subheading**

The uncontested facts readily allow the court to determine, pursuant to GRI 6, the correct subheading of heading 6116, HTSUS for the classification of the merchandise at issue in this case.

Within heading 6116, HTSUS, subheading 6116.10 carries the article description "[Gloves, . . . knitted or crocheted:] . . . Impregnated, coated or covered with plastics or rubber." This subheading describes the gloves at issue.

Within the six-digit subheading, subheadings 6116.10.05 and 6116.10.08, HTSUS, respectively, are not applicable because the gloves are not hockey gloves and are not otherwise "specially designed for use in sports."

The parties agree that the gloves at issue do not have fourchettes, which, plaintiff explains, are strips or shaped pieces used for the sides of the fingers of a glove. Pl.'s Mot. 4 (quoting *What Every Member of the Trade Community Should Know About: Gloves, Mittens & Mitts, Not Knitted or Crocheted, Under the HTSUS* at 8 (CBP 2008)). Because they lack fourchettes, and because these gloves are not "[c]ut and sewn from preexisting machine-knit fabric . . . ," subheadings 6116.10.13–6116.10.48, HTSUS are eliminated from consideration.

Therefore, the correct subheading is as determined by Customs upon liquidation: subheading 6116.10.55, HTSUS ("Gloves, mittens and mitts, knitted or crocheted: Impregnated, coated or covered with plastics or rubber: . . . Other: Without fourchettes: . . . Other: Containing 50 percent or more by weight of cotton, man-made fibers or other textile fibers, or any combination thereof"), subject to duty at 13.2% *ad valorem*.

## III. CONCLUSION

For the reasons stated above, the court rules that plaintiff has not demonstrated that "the government's classification is incorrect." *Jarvis Clark*, 733 F.2d at 876. Accordingly, the court will deny plaintiff's motion for summary judgment, grant defendant's cross motion, and enter summary judgment in favor of defendant.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: March 25, 2022
New York, New York

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-1793

**Short Case Caption:** Magid Glove & Safety Mfg. Co. LLC v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 4,455 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 07/15/2022

Signature: /s/ Lawrence M. Friedman

Name: Lawrence M. Friedman

Save for Filing