**Appeal No. 2022-1793**

# In The United States Court of Appeals For The Federal Circuit

MAGID GLOVE & SAFETY MANUFACTURING CO. LLC,

*Plaintiff-Appellant*,

—v.—

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade
in Case No. 16-00150, Judge Timothy C. Stanceu, Senior Judge

# BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRIAN M. BOYNTON
Principal Assistant Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MARCELLA POWELL
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-1873

*Attorneys for Defendant-Appellee*

*Of Counsel:*

PAULA S. SMITH
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

# TABLE OF CONTENTS

I. The Merchandise ........ 2

II. The Trial Court's Decision ........ 3

SUMMARY OF THE ARGUMENT ........ 6

ARGUMENT ........ 8

I. STANDARD OF REVIEW ........ 8

II. THE APPLICABLE LEGAL FRAMEWORK ........ 8

III. THE TRIAL COURT CORRECTLY HELD THAT THE KNIT GLOVES ARE DESCRIBED IN THEIR ENTIRETY BY THE TERMS OF HEADING 6116, HTSUS ........ 10

IV. THE TRIAL COURT CORRECTLY HELD THAT HEADING 3926, HTSUS, DOES NOT DESCRIBE THE GLOVES IN THEIR ENTIRETY ........ 13

V. THE TRIAL COURT CORRECTLY CONSTRUED AND APPLIED SECTION XI, NOTE 1(h) ........ 13

VI. THE TRIAL COURT CORRECTLY DECLINED TO APPLY THE REASONING IN *KALLE* ........ 18

A. *Kalle* Is Not Applicable And A Remand Is Unwarranted ........ 19

B. Magid Gloves's Request For *En Banc* Consideration Of *Kalle* Should Be Denied ........ 24

CONCLUSION ........ 26

# TABLE OF AUTHORITIES

**Cases**

Amgen Inc. v. Hoechst Marion Roussel, Inc.,
469 F.3d 1039 (Fed. Cir. 2006) .......... 25

Avenues in Leather, Inc. v. United States,
423 F.3d 1326, 1333 (Fed. Cir. 2005) .......... 8, 12

BASF Corp. v. United States,
482 F.3d 1324 (Fed. Cir. 2007) .......... 8

Brookdale Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1988) .. 11

CamelBak Prods., LLC v. United States,
649 F.3d 1361 (Fed. Cir. 2011) .......... 23

Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 2008) .......... 10

Deckers Corp. v. United States,
752 F.3d 949 (Fed. Cir. 2014) .......... 13

DSU Med. Corp. v. JMS Co.,
471 F.3d 1293 (Fed. Cir. 2006) .......... 24

EM. Chems. v. United States, 920 F.2d 910, 913 (Fed. Cir. 1900) .......... 11

Faus Group, Inc. v. United States,
581 F.3d 1369 (Fed. Cir. 2009) .......... 20

Gerson Co. v. United States,
898 F.3d 1232 (Fed. Cir. 2018) .......... 16

GRK Can. Ltd. v. United States,
761 F.3d 1354 (Fed. Cir. 2014) .......... 23

James v. United States, 48 CCPA 75 (1961) .......... 11

Kalle USA, Inc. v. United States,
273 F. Supp. 3d 1319 (Ct. Int'l Trade 2017), *aff'd*,
923 F.3d 991 (Fed. Cir. 2019) ........................................................................ 19

Kalle USA, Inc. v. United States,
923 F.3d 991 (Fed. Cir. 2019) .................................................................. passim

King v. Burwell,
576 U.S. 473 (2015)........................................................................................ 16

La Crosse Tech. v. United States,
723 F.3d 1353 (Fed. Cir. 2013) ...................................................................... 16

Leather, Inc. v. United States,
423 F.3d 1326 (Fed. Cir. 2005) ................................................................. 8, 12

Magid Glove & Safety Manufacturing Co. LLC. v. United States,
Slip Op. 20-74 (May 29, 2020)........................................................................ 3

Marubeni Am. Corp. v. United States,
35 F.3d 530, 535 n.3 (Fed. Cir. 1994) ...................................................... 11, 12

Nat'l Labor Relations Board v. Jones and Laughlin Steel Corp.,
301 U.S. 1 (1937)............................................................................................. 14

Pac Fung Feather Co., Ltd. v. United States,
111 F.3d 114 (Fed. Cir. 1997) ........................................................................ 14

Pomeroy Collection, LTD. v. United States, 559 F. Supp. 2d 1374
(Ct. Int'l Trade 2008) ..................................................................................... 10

Sigma-Tau HealthScience, Inc. v. United States,
838 F.3d 1272, 1276 (Fed. Cir. 2016) ................................................................ 8

Telebrands Corp. v. United States,
865 F. Supp. 2d 1277 (2012), *aff'd*,
522 Fed. Appx. 915 (Fed. Cir. 2013)............................................................. 8, 9

Toyota Motor Sales, U.S.A., Inc. v. United States, 7 Ct. Int'l Trade (1984), *aff'd*,
753 F.2d 1061 (Fed. Cir. 1985) ...................................................................... 11

United States v. Esso Standard Oil Co., 42 CCPA 144, 151 (1955) .................... 11

Victoria's Secret Direct, LLC v. United States,
769 F.3d 1102 (Fed. Cir. 2014) .................................................................... 8

**Rules**

Federal Rule of Appellate Procedure 32(a)(7)(C) ............................................. 25

Federal Circuit Rule 35(a)(2) (2004) ................................................................ 16

Federal Rule of Appellate Procedure 35 ........................................................... 17

**Harmonized Tariff Schedule of the United States (HTSUS)**

General Rule of Interpretation 1 ............................................................. *passim*

General Rule of Interpretation 2 ................................................................... 6

General Rule of Interpretation 3 ................................................................... 6

General Rule of Interpretation 3(b)........................................................... 6, 15

General Rule of Interpretation 4 ................................................................... 6

General Rule of Interpretation 6 ................................................................... 6

Explanatory Notes 61 ...................................................................................... 3

Section VII

Chapter 39 ........................................................................................ *passim*

Note 2(p) to Chapter 39 ........................................................................ 10, 11

Note 10 to Chapter 39............................................................................ 17, 18

Heading 3901 ................................................................................... 1, 3, 9, 10

Heading 3914 ................................................................................... 1, 3, 9, 10.

Heading 3917

Subheading 3917.39.00 .............................................................................. 15

Heading 3920 ........ 5, 17, 18

Heading 3921 ........ 5, 17, 18

Heading 3926 ........ *passim*

Subheading 3926.20.10 ........ 1, 20

Section XI ........ *passim*

Note 1(h) to Section XI ........ *passim*

Note 1(p) to Section XI ........ 14

Chapter 54 ........ 5, 22

Note 1(h) to Chapter 54 ........ 5, 7, 9, 13, 14, 15, 16, 17, 18

Note 10 to Chapter 54 ........ 5

Chapter 59 ........ 12, 14

Note 2(a)(3) to Chapter 59 ........ 7, 19, 20, 21, 22, 23

Heading 5903 ........ 19, 22

Chapter 61 ........ 12

Explanatory Note to Chapter 61 ........ 3

Heading 6116 ........ *passim*

Heading 6116.10 ........ 17

Subheading 6116.10.55 ........ 1, 6

Chapter 63

Subheading 6307.90.98 ........ 13, 14

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for Appellee makes the following statements:

(1) There are no other appeals arising from the decision of the United States Court of International Trade that is the subject of this action now pending before this or any other court of appeals.

(2) The following actions are pending before the United States Court of International Trade and are likely to be affected by this Court's decision in this appeal:

Court No. 16-00036

Court No. 16-00040

Court No. 16-00044

Court No. 16-00149

Court No. 16-00151

Court No. 16-00152

Court No. 16-00153

Court No. 16-00153

Court No. 17-00001

Court No. 17-00003

Court No. 17-00004

Court No. 17-00098

2022-1793

---

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

MAGID GLOVE & SAFETY MANUFACTURING CO. LLC,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

Appeal from the United States Court of International Trade
in Court No. 16-00150, Honorable Timothy C. Stanceu.

---

**BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES**

## ISSUE PRESENTED

Whether the United States Court of International Trade correctly held that the knit textile gloves at issue are correctly classified in heading 6116, Harmonized Tariff Schedule of the United States (HTSUS), which provides for "[g]loves, mittens and mitts, knitted or crocheted."

## STATEMENT OF THE CASE

This appeal involves the proper tariff classification of knit textile gloves imported by appellant, Magid Glove & Safety Manufacturing Co. LLC (Magid Glove). U.S. Customs and Border Protection (CBP or Customs) liquidated the entries of gloves under subheading 6116.10.55, HTSUS[1], which provides for "[g]loves, mittens and mitts, knitted or crocheted . . ." with a duty rate of 13.2% *ad valorem*. Magid Glove contends that the correct tariff classification of the gloves is heading 3926.20.10, HTSUS[2], as "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914 . . ." duty free. The trial court upheld CBP's determination that the gloves fall within the tariff provision for knitted gloves, and the trial court's decision should be affirmed.

### I. The Merchandise

At issue are eight models of knit textile gloves with plastic on a portion of the glove. The glove styles are used in various industries such as automotive manufacturing and material handling. Appx42-53. The knit shell of the gloves is

[1] Subheading 6116.10.55, HTSUS, provides for: "Gloves, mittens and mitts, knitted or crocheted: Impregnated, coated or covered with plastics or rubber: Other: Without Forchettes: Containing 50 percent or more by weight of cotton, man-made fibers or other textile fibers, or any combination thereof . . . ."

[2] Subheading 3926.20.10, HTSUS, provides for: "Other articles of plastics and articles of other materials of headings 3901 to 3914: Articles of apparel and clothing accessories (including gloves, mittens and mitts): Gloves, mittens and mitts: Seamless: Other: Other."

comprised solely of man-made textiles that were "knit to shape," meaning that it was knit from yarn directly to a shape that covered the entire hand with separate sections for each finger. Appx140. After the knitting process, the gloves were partially dipped in polyurethane resulting in plastic only covering the palm and portions of the gloves and fingers of each glove. *See* Samples; Appx210. The knit wrist of the gloves and the back of the gloves are not coated with polyurethane. *See* Samples. The gloves are comprised of more than 50% of textile material by weight. Appx131. *See also* Samples.

## II. The Trial Court's Decision

The trial court issued *Magid Glove & Safety Manufacturing Co. LLC. v. United States*, Slip Op. 20-74 (March 25, 2022) (Appx1-20), following the parties' cross-motions for summary judgment. In deciding the motions, the trial court examined each of the competing tariff headings at issue, namely heading 3926, HTSUS, which covers "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914" and heading 6116, HTSUS which covers "[g]loves, mittens and mitts, knitted or crocheted." The trial court held that the terms of heading 3926 do not describe the knit gloves at issue "because, while comprised in part of a plastic material (polyurethane), the gloves are not 'of plastics' or of the materials of headings 3901 to 3914." Appx8.

Next, the trial court considered heading 6116, HTSUS, and held that under the General Rules of Interpretation (GRI) 1, the terms of the heading describe the subject knit gloves. Appx9, Appx18. In so holding, the court below rejected Magid Glove's argument that the proper classification cannot be achieved through GRI 1 because each heading at issue only describes a portion of the glove. In dismissing Magid Glove's claim, the trial court explained that the Explanatory Note to Chapter 61 directs that if the presence of plastic on a good "constitutes more than mere trimming," the article is to be classified in accordance with the relative Chapter Notes, or failing that, according to the GRIs." Appx9. Relying on the Explanatory Note, the trial court held that the plastic on the gloves is not mere trimming, and looked to the relative Chapter Notes and GRIs to resolve "the issue of whether the plastic coating excludes the gloves from the intended scope of heading 6116." The court held that there are "no other relative chapter notes" and relied on "the GRIs to resolve the question presented." Appx10. "The importance GRI 1 attaches to the terms of the headings provides the answer." *Id*.

Next, the trial court consulted the Explanatory Note to heading 6116 and observed that the Explanatory Note "instructs that '[t]his heading covers *all* knitted or crocheted gloves . . . .'" *Id*. (emphasis in original). The court concluded that the Explanatory Note indicates that the heading was intended to cover gloves "to

which a non-knitted component, such as a plastic layer, has been affixed, even if that non-knitted component is more than mere trimming." *Id*. at 11.

The trial court also rejected Magid Glove's argument that Note 1(h) excludes the knit gloves from classification in Section XI which covers heading 6116. Appx11. The trial court first noted that the placement of the comma following the term "thereof" and the prepositional phrase "of chapter 39" modifies and limits the terms "woven, knitted, or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics" as well as the term "articles thereof" in Note 1(h). Appx12. Thus, in order for the gloves to be excluded by Note 1(h), the gloves must have been made with a fabric of Chapter 39. *Id*. The trial court then examined the provisions of Chapter 39 to ascertain which headings could be described as "fabrics." The trial court noted that the goods of heading 3921, HTSUS, consist of goods comprised of a combination of plastics and other materials that could be described as "fabrics." However, the HTSUS treats those goods as plastic "sheet" or "film." *Id*. at 13.

The GRIs require the consideration of all "relative" section and chapter notes. *Id*. at 15. Therefore, the trial court next examined the notes of Chapter 39, and held that the "fabrics" "that fall within chapter 39, HTSUS, and that, therefore, could be described by note 1(h) are expressly limited by note 10 to chapter 39 . . . ." Appx16. Under Note 10, in headings 3920 and 3921, the expression "'<u>plates,</u>

sheets, film, foil and strip' applies only to plates, sheets, film, foil and strip (other than those of chapter 54)" and to "blocks of regular geometric shape" "but not further worked." The court then read Note 1(h) in tandem with Note 10 and held that "in order to be considered fabrics of chapter 39, not only must" they "be 'impregnated, coated, covered or laminated with plastics,'" they also must be in "uncut or basic rectangular form." Appx16. "An article knitted directly from yarn to an advanced shape such as a glove cannot correctly be said to be such a fabric." *Id*. at 16-17. As a result, the trial court held that Note 1(h) did not cover the knit gloves at issue. Appx17.

The classification of the gloves was achieved by GRI 1, therefore it was unnecessary to resort to GRI 2 through 5. Appx18. Finally, pursuant to GRI 6, the trial court held that the uncontested facts show that the criteria for subheading 6116.10.55, HTSUS, was also satisfied and is the correct subheading for the subject knit gloves. Appx18-19.

## SUMMARY OF THE ARGUMENT

The trial court's decision should be affirmed. The trial court properly classified the knit gloves in heading 6116, HTSUS, which provides for "[g]loves, mittens and mitts, knitted or crocheted." Heading 6116, HTSUS, is not limited by material or substance and, thus, is sufficiently broad to describe the knit gloves as a whole.

Magid Glove presents a myriad of inconsistent and unpersuasive arguments in an effort to show that the trial court erred when it held that the knit gloves are not classifiable in heading 3926, HTSUS, as "[o]ther articles of plastics." First, Magid Glove takes issue with the trial court's interpretation of Section XI, Note 1(h). Note 1(h) excludes two categories of goods from the headings in Section XI: (1) woven, knit or crocheted fabrics, felt, or nonwoven, impregnated, coated, covered or laminated with plastics *of Chapter 39* and (2) articles made from woven, knit or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics *of Chapter 39*. As is relevant here, the Note excludes those articles that are constructed from fabric impregnated, coated, covered or laminated with plastics of Chapter 39. Simply put, for an article to be excluded from Section XI under Note 1(h), the plastic must be present on the fabric *before* it is made into an article of Chapter 39. The trial court's interpretation of Note 1(h) is sound and correct and should be affirmed.

Magid Glove further argues that the "reasoning" in *Kalle USA, Inc. v. United States,* 923 F.3d 991 (Fed. Cir. 2019), controls the classification of the knit gloves, and the trial court's failure to follow that "reasoning" was reversible error. Magid Glove is incorrect. *Kalle* is inapplicable because it involved materially different tariff provisions than those at issue in this case. Moreover, the cornerstone of this Court's "reasoning" in *Kalle* was its interpretation and application of Chapter 59,

Note 2(a)(3). Note 2(a)(3) is not at issue in this case and any reasoning associated with that Note is irrelevant to the classification of the knit gloves.

Lastly, despite relying heavily on *Kalle*, Magid Glove also contradictorily argues that this Court's legal analysis in that decision is incorrect and requests that this Court consider *Kalle en banc.* *En banc* consideration of a case is not favored and Magid Glove has not shown that *Kalle* warrants *en banc* review.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews a classification decision in two steps. First, the Court ascertains the meaning of the applicable tariff terms – a question of law that this Court reviews *de novo*. *Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016). The Court then assesses whether the trial court correctly determined that a particular imported product falls within the tariff term at issue – a question of fact that this Court reviews for clear error. *Victoria's Secret Direct, LLC v. United States,* 769 F.3d 1102, 1106 (Fed. Cir. 2014).

### II. THE APPLICABLE LEGAL FRAMEWORK

In construing the HTSUS, the Court applies the General Rules of Interpretation (GRIs), which are applied in numerical order. *BASF Corp. v. United States*, 482 F.3d 1324, 1326 (Fed. Cir. 2007). GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section

or chapter notes." The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law. *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005). "What is clear from the legislative history of the World Customs Organization and case law is that GRI 1 is paramount . . . The HTSUS is designed so that most classification questions can be answered by GRI 1, so that there would be no need to delve into the less precise inquiries …." *Telebrands Corp. v. United States*, 865 F. Supp. 2d 1277, 1280 (2012), *aff'd*, 522 Fed. Appx. 915 (Fed. Cir. 2013). Pursuant to GRI 1, the language of the HTSUS headings is paramount.

In this action, GRI 1 resolves the classification of the knit textile gloves at issue and, therefore, it is not necessary to resort to the remaining GRIs. The plain language of headings 3926 and 6116, HTSUS, confirmed by the relevant chapter notes, section notes, and Explanatory Notes establish that the knit gloves are properly classifiable under heading 6116, HTSUS.

Here, the two competing HTSUS headings[3] at issue are:

> 3926: Other articles of plastics and articles of other materials of headings 3901 to 3914[;]

and

> 6116: Gloves, mittens and mitts, knitted or crocheted[.]

---

[3] All references to the HTSUS and Explanatory Notes are to the versions that were in effect on December 7, 2016.

GRI 1 also requires the consideration of "any relative section or chapter notes." Section XI, Note 1(h) and Chapter 39, Note 2(p) are mutually exclusionary notes that are relevant to the classification of the knit textile gloves. Heading 6116, HTSUS, is encompassed within Section XI. Note 1(h) to Section XI provides that the section "**does not cover**: ... [w]oven, knit, or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics, or **articles thereof, of chapter 39**." (Emphasis added). Correspondingly, Note 2(p) of Chapter 39 covering heading 3926, HTSUS, states that **"[g]oods of section XI** (textiles and textile articles)" **are excluded** from the scope of Chapter 39." (Emphasis added). Read together, Note 1(h) and Note 2(p) establish that if the knitted gloves at issue are classifiable in heading 6116, HTSUS, they cannot be classified in any heading of Chapter 39.

## III. THE TRIAL COURT CORRECTLY HELD THAT THE KNIT GLOVES ARE DESCRIBED IN THEIR ENTIRETY BY THE TERMS OF HEADING 6116, HTSUS.

GRI 1 states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes . . .". Thus, the first step in ascertaining the correct tariff classification for the subject knit gloves is the interpretation of the headings and relevant notes. Under GRI 1, if an imported article is wholly encompassed by the terms of a single tariff provision, that is the appropriate tariff provision, and the Court need look no further to classify the

product. *Pomeroy Collection, LTD. v. United States*, 559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008).

An *eo nomine* tariff provision describes an article or commodity by a specific name. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). Unless limited or contrary to legislative intent, an *eo nomine* provision includes all forms of the named article. *Id.* However, where an *eo nomine* provision is limited, it does not include all forms of the article, but only those articles that are embraced by the language. *United States v. Charles R. Allen, Inc.*, 37 CCPA 110, C.A.D. 428 (1950); *RMS Elec., Inc. v. United States*, 480 F. Supp. 302, 306 (Cust. Ct. 1979).

Heading 6116, HTSUS, is an *eo nomine* provision for "gloves" that are knitted or crocheted. The tariff term "gloves" is not defined in heading 6116, HTSUS, or in any section or chapter note. Where a tariff term is not defined, it is presumed to be used in its normal sense. *See United States v. Esso Standard Oil Co.,* 42 CCPA 144, 151 (1955); *James v. United States*, 48 CCPA 75 (1961). Such terms are construed in accordance with their common and commercial meaning, which are presumed to be the same. *See E.M. Chems. v. United States,* 920 F.2d 910, 913 (Fed. Cir. 1990) ("[t]ariff terms are to be construed in accordance with their common and popular meaning, in the absence of a contrary legislative intent."); *Toyota Motor Sales, U.S.A., Inc. v. United States*, 7 Ct. Int'l Trade 178,

182 (1984), *aff'd,* 753 F.2d 1061 (Fed. Cir. 1985). "To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789 (Fed. Cir. 1988). *See also Marubeni Am. Corp. v. United States,* 35 F.3d 530, 534 (Fed. Cir. 1994).

The term "glove" is defined as "a covering for the hand having separate sections for each of the fingers and the thumb and often extending part way up the arm." https://www.merriam-webster.com/dictionary/glove (last visited on June 9, 2021). The knit gloves satisfy the definition of the term "gloves" in their entirety as they cover the hand, have separate sections for the fingers, and cover the wrist. *See* Samples.

Heading 6116, HTSUS, also requires that the gloves be "knitted or crocheted." The gloves at issue were manufactured by a knitting process. Appx140. Specifically, the shell of each glove was knit to shape on an industrial knitting machine. Appx210. The subject knit gloves in their entirety are plainly described by the terms of heading 6116, HTSUS. Indeed, the Explanatory Note[4] to

---

[4] The Explanatory Notes provide guidance in interpreting tariff provisions, but are not binding. *Marubeni Am. Corp. v. United States*, 35 F.3d 530, 535 n.3 (Fed. Cir. 1994) (stating Explanatory Notes, while not dispositive or binding, are instructive).

heading 6116, HTSUS, further demonstrates this point and provides, "[t]his heading covers *all* knit or crocheted gloves, without distinction between those for women or girls and those for men or boys." (emphasis added). There are no other relative chapter notes. *See* Explanatory Note to Chapter 61. Accordingly, the trial court correctly held that the subject gloves are properly classifiable in heading 6116, HTSUS, and excluded from Chapter 39. *See* Note 2(p) of Chapter 39.

## IV. THE TRIAL COURT CORRECTLY HELD THAT HEADING 3926, HTSUS, DOES NOT DESCRIBE THE GLOVES IN THEIR ENTIRETY.

Heading 3926, HTSUS, covers "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914." The trial court correctly held that the terms of heading 3926, HTSUS, do not describe the knit gloves in their entirety. Appx8-9. While there is plastic (polyurethane) on the palm and one side of the fingers of the gloves, the gloves are not "of plastics" or of other materials of headings 3901 to 3914, HTSUS. *Id*. *See* Samples.

## V. THE TRIAL COURT CORRECTLY CONSTRUED AND APPLIED SECTION XI, NOTE 1(h).

Pursuant to GRI 1, after construing headings 6116 and 3926, HTSUS, the trial court considered Note 1(h), and correctly held that the note does not preclude the knit gloves from classification in Section XI (heading 6116). The trial court focused on the undisputed fact that the gloves were partially dipped in polyurethane *after* the knit to shape process. The trial court concluded that Note

1(h) does not describe the gloves as they are not knitted or crocheted fabrics, felt, or nonwoven, impregnated, coated, covered or laminated with plastics of Chapter 39. The gloves also are not made from knitted or crocheted fabrics, felt or nonwoven, impregnated, coated, covered or laminated with plastics of Chapter 39. Appx12, Appx16-17.

Magid Glove argues "that the Trade Court's conclusion that Section XI, Note 1(h) only applies to products made of pre-existing plastic-treated fabric adds a temporal limitation to the Note that is not present in the text." App. Br. 16-17. According to Magic Glove, Note 1(h) applies to articles, such as the gloves at issue, to which a plastic coating is applied *after* the article is knitted. Magid Glove argues that, under that scenario, the plastic is applied to a portion of the knitted article that could be considered to be "fabric" of the glove. Magid Glove's interpretation is flawed as it is not supported by the plain language of the Note.

Magid Glove's proffered interpretation of Note 1(h) does not give effect to the terms "articles thereof" and "of Chapter 39" in Note 1(h). The "cardinal rule of statutory construction is to save and not to destroy." *Pac Fung Feather Co., Ltd. v. United States,* 111 F.3d 114, 117 (Fed. Cir. 1997) (citing *Nat'l Labor Relations Board v. Jones and Laughlin Steel Corp.,* 301 U.S. 1, 30 (1937)). Section Note 1(h) only excludes certain fabrics and articles made from those fabrics that are classified in Chapter 39 in the first instance. *Kalle USA*, 273 F. Supp. 3d at 1332

("Thus, a product which is not classifiable under Chapter 39 would not be excluded from Section XI under Note 1(h))". By its express language, Note 1(h) only excludes two categories of goods from Section XI: (1) woven, knitted or crocheted fabrics, felt, or nonwoven, impregnated, coated, covered or laminated with plastics *of Chapter 39* or (2) articles made from woven, knitted or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics *of Chapter 39*. Note 1(h) limits the reach of the headings of Section XI excluding articles of knitted fabric impregnated, coated, covered or laminated with plastic, but the note does not dictate that such articles are automatically classified within Chapter 39.

Relying on dictionary definitions of "knit fabric" and "fabric," Magid Gloves discusses how its gloves are made of "fabric" and that the plastic applied to the glove's "fabric" satisfies Note 1(h). App. Br. at 16-18. However, it is not enough to define these terms in isolation; rather Magid Glove must prove that its gloves are made of knitted fabric "impregnated, coated, covered or laminated with plastic" that is classifiable in Chapter 39. Specifically, Magid Glove must establish that the knit gloves are "other articles of plastics" of heading 3926 and once that is established, that its gloves are "articles of apparel and clothing accessories (including gloves, mittens and mitts): Seamless" of subheading 3926.20.10, HTSUS.

Additionally, as this Court has held, provisions do not "exist in a vacuum, and we must read it in conjunction with other relevant provisions to discern its meaning." *Gerson Co. v. United States*, 898 F.3d 1232, 1236–37 (Fed. Cir. 2018) *(citing La Crosse Tech. v. United States*, 723 F.3d 1353, 1361 (Fed. Cir. 2013)) (this Court reads tariff headings together and along with their respective Explanatory Notes to conclude that they "set out mutually exclusive categories of meteorological devices"); *cf. King v. Burwell*, 576 U.S. 473 (2015) ("[O]ftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions." (citations and internal quotation marks omitted)).

Magid Glove's proffered interpretation of Note 1(h) would render other provisions of the HTSUS superfluous. Indeed, under Magid Glove's theory, preexisting knit to shape gloves that are dipped in plastic would automatically be excluded from classification in Section XI as well as gloves made from knit fabric "impregnated, coated, covered or laminated with plastics." Such an interpretation would eviscerate all of the subheadings under the six-digit subheading 6116.10, HTSUS ("Gloves, mittens and mitts, knit or crocheted: *Impregnated, coated or covered with plastics or rubber* . . ." (emphasis added)). The trial court correctly

interpreted Note 1(h) and held that it did not exclude the gloves from Section XI (heading 6116).

In an attempt to demonstrate error by the trial court in interpreting Note 1(h), Magid Glove posits the following hypothetical: "under the Trade Court's analysis, Section XI, Note 1(h) would apply to a square of the coated palm cut from glove." App. Br. at 19. Magid Glove then argues that the trial court's interpretation of Note 1(h) would lead to an absurd result because such a swatch would be excluded from classification in Section XI, but that a pre-existing knit-to-shape shell that is wholly coated and impregnated in plastic on all sides is not. *Id*. Magid Glove's hypothetical and analysis are flawed. As we established above, Note 1(h) excludes fabrics that are impregnated, coated, covered or laminated with plastics *of Chapter 39* from classification in Section XI. Magid Glove's scenario does not, in the first instance, establish that its hypothetical palm swatch would be classifiable in Chapter 39.

Magid Glove also argues that the trial court's reliance on Chapter 39, Note 10[5] to inform its interpretation of Note 1(h) was incorrect. App. Br. at 17. Given

---

[5] Note 10 to Chapter 39, HTSUS: "In headings 39.20 and 39.21, the expression "plates, sheets, film, foil and strip" applies only to plates, sheets, film, foil and strip (other than those of Chapter 54) and to blocks of regular geometric shape, whether or not printed or otherwise surface-worked, uncut or cut into rectangles (including squares) but not further worked (even if when so cut they become articles ready for use)."

that the trial court held that the knit to shape gloves are not an "article" made of knitted fabrics "impregnated, coated, covered or laminated with plastics of Chapter 39 and are not covered by Note 1(h), it was not necessary for the trial court to reach Chapter 39, Note 10. Nevertheless Magid Glove argues that Note 10 "unambiguously applies only in the limited circumstances of defining 'plates, sheets, film, foil and strip' of Headings 3920 and 3921" and "that goods of Heading 3926 do not have to be composed of plates, sheets, or other materials of Headings 3920 or 3921." *Id*. Magid Glove mischaracterizes the trial court's holding regarding Note 10. The trial court did not limit heading 3926 to goods of heading 3920 or 3921. The trial court simply held that to identify the fabrics "of Chapter 39" that are covered by Note 1(h), Note 1(h) can be read together with Note 10 to Chapter 39. Appx15-16. Although Magid Glove argues that the trial court's reliance on Note 10 is incorrect, Magid Glove has failed to identify the Chapter 39 "fabrics" that are covered by Note 1(h) and how the knitted gloves are articles of those fabrics, and failed to identify how the trial court committed reversible error.

## VI. THE TRIAL COURT CORRECTLY DECLINED TO APPLY THE REASONING IN *KALLE.*

### A. *Kalle* Is Not Applicable And A Remand Is Unwarranted.

Magid Glove does not challenge the trial court's determinations that the knit gloves at issue are described by the terms of heading 6116, HTSUS, and are *not* described in their entirety by heading 3926, HTSUS. Rather, Magid Glove argues that the "reasoning" in this Court's decision in *Kalle USA, Inc. v. United States*, 923 F.3d 991 (Fed. Cir. 2019), should have been applied. App. Br. at 14 ("As an inferior Court, the Court of International Trade should have applied the analysis this Court mapped out in *Kalle*."). Specifically, Magid Glove argues that *Kalle* "addressed the same provisions of the HTSUS." *Id*. at 11. Magid Glove further argues that *Kalle* required the trial court to make a factual finding as to whether "the fabric portion of the gloves is 'completely embedded' in plastic such that it would be excluded from Heading 5903 by Chapter 59, Note 2(a)(3)."[6] *Id*. at 11-14. In Magid's view, if the gloves are "completely embedded" in plastic, they would be excluded from Section XI by the operation of Section Note 1(h). *Id*. Magid

[6] In its moving brief below, Magid vehemently argued that Chapter 59, Note 2(a)(3), and heading 5903 *did not* apply to its imported gloves. Appx321 ("First, Chapter 59 is not at issue in classifying gloves of Chapter 61"); Appx323 ("Because the Chapter 59 Note is not applicable to knit to shape products, Magid does not agree that this test is applicable to the current case.")

Glove requests that this action be remanded to the trial court to make that factual finding. *Id*. at 14. Magid Glove's argument misses the mark.

First, the "reasoning" in *Kalle* is not controlling because the legal issues presented in that decision differ materially from the legal issues in this action. In *Kalle*, the question before this Court was whether imported casings were "completely embedded in plastics" as that term is used in Note 2(a)(3) to Chapter 59. 923 F.3d at 992 ("[T]he controlling question here is whether the casings' textile fabric is "completely embedded in plastics.") The casings were comprised of a woven textile sheet that was coated with a layer of plastic on one side. The plastic coating only filled the interstitial spaces between the textile fibers to ensure that the casing's textile character remained recognizable even after a coating. *Id*. at 993. The competing tariff provisions were subheadings 6307.90.98, HTSUS[7], and 3917.39.00, HTSUS[8]. For an article to fall under Chapter 63, it must be an article "of any textile fabric." *Id.* at 994. *See also* Chapter 63, Note 1, HTSUS.

The Court began its classification analysis by acknowledging that Note 1(h) to Section XI and Note 1(p) to Chapter 39 are "mutually exclusive exclusionary

---

[7] Subheading 6307.90.98, HTSUS, provides for "[o]ther made up articles, including dress patterns: . . .[o]ther . . .[o[ther."

[8] Subheading 3917.39.00, HTSUS, provides for "[t]ubes, pipes and hoses and fittings therefor (for example, joints, elbows, flanges), plastics" . . . [o]ther . . . [o]ther."

notes" that preclude an imported article from being classifiable under both Section XI and Chapter 39. *Id*. at 994. The Court looked to "Chapter 59 to determine whether the article should be classified as a textile under Section XI or a plastic under Chapter 39." *Id*. Heading 5903, HTSUS, of Chapter 59 covers "[t]extile fabrics, impregnated, coated, covered or laminated with plastics." However, the heading does not cover "Products in which the textile fabric is either *completely embedded in plastics* or entirely coated or covered on both sides with such material, provided that such coating or covering can be seen with the naked eye with no account being taken of any resulting change of color …." Note 2(a)(3), Chapter 59. Those products would be classifiable in Chapter 39. *Id*. Therefore, the controlling question in that proceeding was whether the casings' textile fabric is "completely embedded in plastics." *Id.* at 994.

After considering several dictionary definitions of the terms "completely" and "embedded," the Court held that the tariff term "completely embedded" in Note 2(a)(3) to Chapter 59 means that the fabric must be "completely" or entirely fixed in a surrounding mass of plastic. *Id*. at 995. The term does not require "every surface of the fiber to be fixed and surrounded by a mass of plastic," but even with this qualification, the Court affirmed the trial court's decision and held that the sausage casings, with plastic on the entirety of one side, were not

"completely embedded in plastics" as that phrase is used in HTSUS Chapter 59 Note 2(a)(3). *Id*. at 996.

This Court's "reasoning" in *Kalle* is not applicable to the classification of the knit gloves because the focus of that reasoning was the determination of whether the casing constituted a "textile fabric" for purposes of classification in heading 6307, HTSUS. To resolve that question, the Court examined the interplay of headings 3917, 5903, and 6307, and the application of Chapter 59, Note 2(a)(3). None of those tariff provisions are at issue in this case. Moreover, unlike heading 6307, HTSUS, heading 6116, HTSUS, does not have a corresponding legal note limiting it to "any textile fabric." Indeed, heading 6116, HTSUS, is limited to "knitted or crocheted articles." S*ee* Note 1, Chapter 61 ("This Chapter applies only to made up knitted or crocheted articles.")

Furthermore, Magid Glove further misapplies *Kalle* by arguing that if the Court found that the casings at issue were "completely embedded" in plastic under Note 2(a)(3) to Chapter 59, the casings would have necessarily been "excluded from Section XI by the operation of Section Note 1(h)." App. Br. at 12. This Court did not make that pronouncement in *Kalle* as Note 1(h) does not contain the term "completely embedded" Magid Glove's importation of the term "completely embedded" into Note 1(h) is improper. Consequently, the trial court correctly

examined the plain terms of the applicable headings under GRI 1, and properly disposed of this matter on summary judgment.

Second, remand of this action for factfinding is not warranted because the correct classification of the knit gloves is achieved by determining the meaning of heading 6116, HTSUS, which is a question of law. "[W]hen, as here, there is no factual dispute regarding the merchandise, its structure and use, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions." *Faus Group, Inc. v. United States*, 581 F.3d 1369, 1372 (Fed. Cir. 2009). Under GRI 1, the language of the heading is paramount. The terms of heading 6116, HTSUS ("[g]loves, mittens and mitts, knitted or crocheted") are dispositive of the classification question as they cover the subject knit gloves in their entirety, without any need to conduct a finding of fact as to whether the "fabric portion of the gloves" is "completely embedded" in plastic.

Magid Glove's reliance on *GRK Can. Ltd. v. United States*, 761 F.3d 1354, 1361 (Fed. Cir. 2014), and *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1369 (Fed. Cir. 2011), to argue for a remand is also misplaced. Both cases are easily distinguishable from the situation at hand. In *GRK Can. Ltd.,*, this Court remanded the action because the proper interpretation of the *eo nomine* heading at issue required the trial court to consider the use of the imported product. In

*Camelbak*, this Court remanded the action to the trial court for an "essential character" analysis under GRI 3(b) which is a question of fact. 649 F.3d at 1369-70. Here, there is no need for additional findings to determine the correct classification and any suggestion of a remand should be rejected.

### B. Magid Glove's Request For *En Banc* Consideration Of *Kalle* Should Be Denied.

Notwithstanding that Magid Glove argues that the trial court erroneously disregarded the "reasoning" in *Kalle*, Magid Glove also suggests that the panel recommend to the full court that *Kalle* be overruled *en banc.* App. Br. 15. *See* Fed. Cir. R. 35(a)(2) (2004). Magid Glove argues that the Court's legal analysis of Chapter 59, Note 2(a)(3) is incorrect and merits *en banc* review. As we already established, *Kalle* involved different subheadings and the classification analysis entailed the application of Chapter 59, Note 2(a)(3). The fact that Magid Glove simply disagrees with this Court's legal analysis in *Kalle* is insufficient to merit *en banc* reconsideration.

*En banc* review should be reserved for actual conflicts between precedential cases and for cases of exceptional importance. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1311 (Fed. Cir. 2006) (Michel, C.J., and Mayer, J., concurring). This Court begins its inquiry with Federal Rule of Appellate Procedure 35, which states:

> An *en banc* hearing is not favored and ordinarily will not be ordered unless:
>
> (1) *en banc* consideration is necessary to secure or maintain uniformity of the court's decisions; or
>
> (2) the proceeding involves a question of exceptional importance.

Here, Magid Gloves has not established that this Court's *Kalle* decision satisfies the requirements for *en banc* treatment. Magid Gloves has not shown whether an *en banc* consideration of *Kalle* would resolve a disagreement among the Court's decisions or whether such consideration would answer an exceptionally important question. Magid Gloves simply argues that, in its view, *Kalle* was incorrectly decided. "Not every error by a panel is 'enbancable,' and '[a] panel is entitled to err without the full court descending upon it.'" *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 469 F.3d 1039, 1043 (Fed. Cir. 2006) (Lourie, J., concurring in denial of rehearing en banc). Accordingly, Magid Glove's request for *en banc* consideration of *Kalle* should be denied.

## CONCLUSION

For the reasons discussed above, the trial court's decision should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Marcella Powell
MARCELLA POWELL
Senior Trial Counsel
Civil Division
Commercial Litigation Branch
Department of Justice
26 Federal Plaza- Suite 346
New York, New York 10278
Tel. (212) 264-9230
Attorneys for Defendant-Appellee

Of Counsel:

PAULA S. SMITH, ESQ.
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: November 7, 2022

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FRAP 32(a)(7)(C)**

| | |
|---|---|
| MAGID GLOVE & SAFETY MANUFACTURING, CO. LLC<br><br>Plaintiff-Appellant,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant-Appellee. | Appeal No. 2022-1793 |

I, MARCELLA POWELL, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word Count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under Rule 32(a)(7)(B) and contains 5,801 words.

/s/ Marcella Powell
Marcella Powell