No. 2022-1793

# In the
# United States Court of Appeals
# for the Federal Circuit

MAGID GLOVE & SAFETY MANUFACTURING CO. LLC,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade,
No. 1:16-cv-00150-TCS.
The Honorable **Timothy C. Stanceu**, Judge Presiding.

## REPLY BRIEF OF PLAINTIFF-APPELLANT

LAWRENCE FRIEDMAN
(lfriedman@barnesrichardson.com)
BARNES, RICHARDSON & COLBURN LLP
303 East Wacker Drive
Suite 305
Chicago, Illinois 60601
(312) 565-2000

*Counsel for Magid Glove & Safety Manufacturing Co. LLC*

# TABLE OF AUTHORITIES

**Cases**

*Blakley Corp. v. United States*, 15 F. Supp. 2d 865 (1998).....................12

*Kalle USA, Inc. v United States,* 923 F.3d 991 (Fed. Cir. 2019) .... passim

*Magid Glove & Safety Mfg. Co. LLC v. United States*, 567 F. Supp. 3d 1334 (Ct. Int'l Trade 2022) ..................................................................3, 9

*United States v. Citroen*, 223 U.S. 407 (1912) .........................................8

**Statutes**

HTSUS Chapter 39, Note 2(p) ..........................................................3, 13

HTSUS, Chapter 59, Note 2(a)(3) ...........................................3, 6, 12, 16

HTSUS, Chapter 63, Note 1....................................................................4

HTSUS, General Rule of Interpretation 1.............................................11

HTSUS, General Rule of Interpretation 2(b) .......................................14

HTSUS, General Rule of Interpretation 3(b) .......................................14

HTSUS, Section XI, Note 1(h)......................................................1, 8, 16

**Administrative Materials**

Explanatory Notes to the Harmonized System, Section XI, Note 11.......8

HQ H246723 (May 26, 2016)...............................................................15

# **<u>REPLY OF APPELLANT MAGID GLOVE & SAFETY MFG. CO. LLC</u>**

## I. THIS COURT'S DECISION IN *KALLE* IS APPLICABLE AND, UNLESS OVERTURNED *EN BANC*, THE TRADE COURT ERRED BY NOT APPLYING IT

This Court's decision in *Kalle USA, Inc. v United States,* 923 F.3d 991 (Fed. Cir. 2019), provides the controlling framework to resolve the application of Section XI, Note 1(h) of the Harmonized Tariff Schedule of the United States ("HTSUS") to the classification of knit-to-shape gloves that are dipped in polyurethane on the palm side. Following *Kalle*, if the knit fabric making up the shell of the glove is "completely embedded in plastic," the gloves, like the casings at issue in *Kalle*, would be excluded from Section XI and, therefore, from Heading 6116 if they are also classifiable in Chapter 39 of the Harmonized Tariff Schedule of the United States. On the other hand, if the textile material is not completely embedded in plastic, the plastic-treated gloves are properly classified in Chapter 61. *Id.* at 994-95. The Court further held that fabric is completely embedded in plastic when it "completely or entirely fixed in a surrounding mass of plastics." *Id.* at 996. Magid asserts that under the definition from *Kalle,* the knit fabric in its gloves

is completely embedded in the polyurethane coating and, therefore, excluded from HTSUS Section XI if the gloves are classifiable in Chapter 39.

Counsel for Magid recognizes it has not been consistent in its articulation of this standard. Magid agrees with the United States that Section XI, Note 1(h) does not automatically exclude all fabrics that have been impregnated, coated, covered, or laminated with plastic nor does it exclude all articles of fabric that has been impregnated, coated, covered, or laminated with plastic. For the exclusion to apply, the Note also requires that the fabric or article be classifiable in Chapter 39. Magid has consistently stated its view that the Trade Court's error was in not following *Kalle* to make a determination of whether the knit shells in the subject gloves are completely or entirely fixed in a surrounding mass of plastic and, therefore, excluded form Section XI if the gloves are classifiable in Chapter 39.

Rather than address *Kalle* head on, the United States seeks to distinguish it. First, the Government asserts that there are materially different legal issues presented. Brief for Defendant-Appellee, 20 (hereinafter "Appellee Br."). That is not the case. In both *Kalle* and in

this case, the question presented is whether products composed of fabric partially coated in plastic are excluded from classification in Section XI by the operation of Section XI, Note 1(h), HTSUS. *Compare Kalle,* 923 F.3d at 994 (using Chapter 59 to determine whether the article is a textile of Section XI or an article of plastic of Chapter 39) to Appx9, *Magid Glove & Safety Mfg. Co. LLC v. United States*, 567 F. Supp. 3d 1334, 1339 (Ct. Int'l Trade 2022) ("The issue presented by plaintiff's argument is whether the presence of the plastic coating on the palm and portions of the fingers and thumb of each glove is sufficient, *per se*, to exclude these articles from heading 6116, HTSUS."). Here, as in *Kalle*, the plaintiff-importer is pointing to Chapter 59, Note 2(a)(3) as a means of differentiating between products that are ultimately classifiable as articles of plastics of Chapter 39 in Section VII and those that are textiles of Section XI. *Kalle*, 923 F.3d at 994 (noting that the parties agree that the case turns on the meaning of HTSUS Chapter 59, Note 2(a)(3)). Finally, in both cases, the relevant classification in Chapter 39 is subject to HTSUS Chapter 39, Note 2(p), which excludes textiles and textile articles from Chapter 39. Giving *Kalle* its proper precedential weight as the controlling interpretation of how those legal

texts interact, the Trade Court should have used the same analysis here.

The Government's argument that the potential classification of the meat casing at issue in *Kalle* was as an "other made up article" of Heading 6307 does not differentiate *Kalle.* Appellee Br. 22. The operative text in both cases is a Section Note that applies equally to Heading 6116 and to Heading 6307. The existence of Chapter 63, Note 1 stating that Chapter 63, Subchapter 1, which encompasses Heading 6307, applies only to made up articles, of any textile fabric, as opposed to the knitted and crocheted materials of gloves, mittens, and mitts of Heading 6116 is irrelevant to whether Section XI, Note 1(h) excludes Magid's gloves from the entirety of Section XI if they are also classifiable in Chapter 39. In both cases, if the merchandise is an article of fabric that is impregnated, coated, covered, or laminated with plastics such that it is completely embedded in a surrounding mass of plastics, the effect of the Section Note, as interpreted by this Court in *Kalle*, is the same. Nothing in the text of Section XI, Note 1(h) indicates it has any different meaning here than this Court found it did in *Kalle.*

Moreover, the Government appears to misunderstand the holding of *Kalle*. This is clear at Appellee Br. 22 where the Government contests whether the *Kalle* decision applied the term “completely embedded” from Chapter 59, Note 2(a)(3) to define the scope of the exclusion contained in Section XI, Note 1(h) for knit and other fabrics that “are impregnated, coated, covered or laminated with plastics, or articles thereof, of chapter 39.” The text of the *Kalle* decision belies this approach. The first sentence of the analysis in that case states, “The parties agree that this case turns on the interpretation of the phrase ‘completely embedded in plastics’ as it is used in HTSUS Chapter 59, Note 2(a)(3).” *Kalle*, 923 F.3d at 994. The Court went on to say, “Where an article is comprised of both textile and plastic, we must look to Chapter 59 to determine whether the article should be classified as a textile under Section XI or a plastic under Chapter 39.” *Id*. That is precisely the question presented here and precisely why the Court of International Trade erred when it failed to either apply this Court’s analysis in *Kalle* or identify a meaningful distinction.

## II. APPLIED PROPERLY, *KALLE* REQUIRES A DETERMINATION OF WHETHER THE KNIT GLOVE SHELL IS COMPLETELY EMBEDDED IN PLASTIC

Chapter 59, Note 2(a)(3) states in relevant part that:

> Heading 5903 applies to:
>
> (a) Textile fabrics, impregnated, coated, covered or laminated with plastics, whatever the weight per square meter and whatever the nature of the plastic material (compact or cellular), other than:
>
> > . . .
> >
> > (3) Products in which the textile fabric is either *completely embedded in plastics* or entirely coated or covered on both sides with such material, provided that such coating or covering can be seen with the naked eye with no account being taken of any resulting change of color (chapter 39);

HTSUS, Chapter 59, Note 2(a) (emphasis added). To properly apply the Chapter 59 Note, which was necessary to determine the scope of the exclusion in Section XI, Note 1(h), the Federal Circuit panel in *Kalle* had to determine the meaning of "completely embedded in plastics." The panel agreed with the Trade Court that "for a textile to be completely embedded in plastic, it must be firmly fixed in the plastic." *Kalle,* 923 F.3d at 995. The per curiam opinion further held that the textile can be

completely embedded in plastic without being covered on all sides, provided it is fixed in a surrounding mass of plastic. *Id*. at 995-96.[1]

The Government misses the impact of *Kalle* when it argues that Magid is improperly trying to "import[]" the term "completely embedded" into Section XI, Note 1(h). Appellee Br. 22. Magid has done the opposite. First, *Kalle* is the law applicable to this case and it is *Kalle* that requires the use of Chapter 59, Note 2 to determine whether articles composed of both textile and plastic are excluded from Section XI by operation of Note 1(h), if also "of Chapter 39."*Id.* at 994. Second, Magid has also respectfully argued the decision in *Kalle* improperly relied on Note 2 to Chapter 59 to determine the scope of a heading in Chapter 61. App. Br. 15. That is why Magid has suggested that this Court may wish to reconsider *Kalle en banc.*

The Government is also incorrect when, starting at Appellee Br. 15, it attempts to show that Magid's interpretation of Section XI, Note 1(h) is flawed. First, Magid's "proffered interpretation Note 1(h),"

[1] In a concurring opinion, Circuit Judge Hughes notes he would hold that the textile is not "completely embedded" unless every surface of the fiber is surrounded by plastic.

Appellee Br. 16, does no harm to the scope of Heading 6116. Magid disagrees that preexisting knit-to-shape gloves that are dipped in plastic would "automatically" be excluded from classification in Section XI. Appellee Br. 16. Such gloves would be excluded from Section XI only if the fabric portion is completely embedded in plastic (*i.e.,* fixed firmly in a surrounding mass of plastic) and the glove is classifiable in Chapter 39. This result is entirely consistent with guidance from the *Explanatory Notes,* which state "For purposes of this section, the expression 'impregnated' includes 'dipped.'" Explanatory Notes to the Harmonized System, Section XI, Note 11.

The proposition that Magid has failed to give effect to the phrases "articles thereof" and "of Chapter 39" in Note 1(h), Appellee Br.14, is also incorrect. The flaw in the Government's analysis is that "articles thereof," as used in Note 1(h) describes the imported article, not how the article was made. Inferring that the order of manufacturing matters to the classification of the merchandise is inconsistent with the well-established rule that merchandise is classified by an examination of the product as imported. *United States v. Citroen*, 223 U.S. 407, 414-15 (1912). When the glove or other article is, at the time of entry, composed

of knit fabric that has been impregnated, coated, covered, or laminated with plastics, it is an "article thereof," giving meaning to all the words in the note. Such articles, if classifiable in Chapter 39, are excluded from Section XI. The Government's interpretation, which is consistent with the Trade Court's, has the absurd consequence that the Note will exclude all knit-to-shape articles no matter how much plastic has been applied to it because the fabric was not a pre-existing plastic-treated fabric of Chapter 39. *See Magid Glove & Safety*, 567 F. Supp. 3d at 1342 (Ct. Int'l Trade 2022) ("knitted fabrics must be in uncut or basic rectangular form and thus cannot be in more complex shapes.").

The Court's decision in *Kalle* solves the problem of applying both Section XI, Note 1(h) *excluding* impregnated, coated, covered, or laminated textile articles of Chapter 39 while the HTSUS simultaneously *includes* knit gloves that are impregnated, coated, covered or laminated with plastics in subheading 6116.10. A knit ice hockey glove of 6116.10.05, for example, would be excluded from Section XI only if the plastic applied to it were sufficient to firmly fix the fabric in a surrounding mass of plastic and it otherwise satisfies the requirements for classification in Chapter 39. Knit hockey gloves that

are impregnated, coated, covered, or laminated in plastic but not sufficiently surrounded in plastic or that are not classifiable in Chapter 39 remain in Heading 6116.10.05.

The Government is also incorrect when it claims that Magid failed to demonstrate that its gloves are classifiable in Chapter 39. Appellee Br. 15. The Trade Court specifically determined that after knitting, the shell was dipped in polyurethane plastic. Appx2. They are, therefore, articles of knit fabric that are partially coated in plastic. There is no dispute over whether the finished articles are gloves. Appx325, ¶ 2; Appx328, ¶ 2 (CIT Rule 56.3 Statements Of Material Facts As To Which There Is No Genuine Issue To Be Tried). Moreover, the parties agree that the gloves are seamless. Appx325, ¶ 5; Appx326, ¶ 12; Appx328, ¶ 5; Appx329, ¶ 12. The gloves are, therefore, *prima facie* classifiable in HTSUS Heading 3926 unless they are articles of textile that are excluded by Chapter 39, Note 2(p).

Given the current law, the Trade Court erred when it failed to follow the decision in *Kalle* to resolve the tension between Chapter 39 and Section XI by making the required determination of whether the textile component of Magid's gloves is surrounded by a mass of plastic

and, therefore, are completely embedded in plastic. The Trade Court should have applied *Kalle* to the undisputed facts presented, including samples of the subject gloves, to determine whether plastic surrounds the fabric in a manner sufficient to completely embed it in plastic. This Court should, therefore, remand this matter to the Trade Court to make that determination and reconsider its decision in light of the finding.

## III. EN BANC REVIEW OF *KALLE* IS APPROPRIATE

As detailed above, the Federal Circuit's decision in *Kalle* provides a workable basis on which to resolve this classification dispute. However, the determination of whether the fabric is completely embedded in plastic changes the analysis of plastic-coated textiles in a manner that introduces uncertainty in tariff classification and changes the standard provided in the text of the HTSUS. Specifically, the use of Chapter 59, Note 2 to determine the scope of headings within Chapter 61 appears to be inconsistent with the instruction in General Rule of Interpretation 1 that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS. Reconsidering *Kalle* will promote coherence and uniformity in the interpretation of the tariff schedule.

The application of Chapter 59, Note 2 in *Kalle* is analogous to an argument the Trade Court rejected in *Blakley Corp. v. United States*, 15 F. Supp. 2d 865 (1998). In that case, the Court had to determine the classification of artificial stone flooring and wall components of Heading 6810. The competing provisions were "tiles" and "other." *Id.* at 866. There were two Additional U.S. Rules of Interpretation at issue in the case. AUSRI 1 defined "slabs" "for purposes of heading 6802." The second defined "tiles" for "purposes of heading 6810." *Id.* at 867. Plaintiff argued that the definition of slab in Note 1 should apply generally throughout Chapter 68. *Id.* at 867-68. The Trade Court rejected this approach and held that where the text of a Note expresses a Congressional intent to limit its applicability, the Court will give effect to that intent. *Id.* at 869.

The same is true here. Chapter 59, Note 2 begins with an express limitation that "Heading 5903 applies to . . ." and goes on to list, among other things, "(a) Textile fabrics, impregnated, coated, covered or laminated with plastics, whatever the weight per square meter and whatever the nature of the plastic material (compact or cellular) . . .." The Note then lists the exclusions from Heading 5903, including "(3)

Products in which the textile fabric is either completely embedded in plastics or entirely coated or covered on both sides with such material, provided that such coating or covering can be seen with the naked eye with no account being taken of any resulting change of color (chapter 39) . . ..” Although this Note provides limitations on the scope of plastic-treated fabrics, the text specifies that the Note applies to Heading 5903. Chapter 59, Note 2 is, therefore, in the parlance of GRI 1, not a “relative” chapter note.

The alternative approach is to apply Section XI, Note 1(h) to exclude from that section “Woven, knitted or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics, or articles thereof, of chapter 39 . . ..” These articles need not be “completely embedded in plastic,” only “impregnated, coated, covered, or laminated,” including dipped, within the terms of the Note. Moreover, this Note only excludes items that are also classifiable in Chapter 39. And, as previously noted, Chapter 39, Note 2(p) excludes from Chapter 39 “Goods of section XI (textiles and textile articles) . . ..”

Thus, textile gloves of Section XI that have been treated with plastic that are not classifiable in Chapter 39 by virtue of Note 2(p)

remain in Section XI even when impregnated or otherwise treated with plastic. This application of the relative notes preserves the space for impregnated and otherwise plastic-coated gloves in Heading 6116 while acknowledging that when the plastic becomes the predominant material for classification purposes, plastic-coated textile gloves are classifiable in Heading 3926.

U.S. Customs and Border Protection previously distinguished between textile and plastic gloves based on General Rule of Interpretation 2(b) which states that:

> Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances. Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance. The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

General Rule of Interpretation 3(b) then provides that:

> Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

Following this path through the GRI, Customs has previously informed importers that "When the glove shell is composed of two or more materials, an essential character determination must be made. Normally the palm side (fingertips to wrist) material will determine the essential character." *See* Informed Compliance Publication, *What Every Member of the Trade Community Should Know: Gloves, Mittens, & Mitts, Not Knitted or Crocheted, Under the HTSUS*, at 7 (CBP 2008)(Appx151); *See also* HQ H246723 (May 26, 2016). If Customs or the Court were to find that the plastic did not impart the essential character, the gloves would not be classifiable in Chapter 39 and would be classified in Heading 6116.

As argued in Magid's principal brief, App. Br. 15, this is not, as the Government suggests, a theoretical disagreement with the outcome of *Kalle*. If Chapter 59, Note 2(a)(3), controls the classification of goods in Chapter 61, the requirement that goods be excluded from a heading of Section XI changes from "impregnated, coated, covered or laminated with plastics, or articles thereof, of chapter 39" to the more stringent "completely embedded in plastics or entirely coated or covered on both sides with such material, provided that such coating or covering can be

seen with the naked eye with no account being taken of any resulting change of color (chapter 39).” Compare Section XI, Note 1(h) to Chapter 59, Note 2(a)(3). Moreover, the decision in *Kalle* may encourage importers, Customs and Border Protection, and the Trade Court to look far afield from the text of relevant tariff headings and the “relative” section and chapter notes when classifying merchandise, resulting in reduced predictability and certainty in classification outcomes.

## IV. CONCLUSION

Applying this Court’s reasoning in *Kalle*, Magid’s gloves are classifiable in HTSUS Heading 3926 because the textile component is firmly fixed in a surrounding mass of plastic and, therefore, completely embedded in plastic. The Trade Court erred when it refused to consider *Kalle* in its classification of Magid’s gloves. For that reason, this case should be remanded to the Trade Court with instructions that it consider whether, based on the facts before it, the textile is firmly fixed in a surrounding mass of plastic and, therefore, completely embedded in plastic. Moreover, Magid respectfully suggests that this Court should reverse that portion of the Trade Court decision holding that Section XI, Note 1(f) only applies to articles in which the fabric is coated prior to

forming the finished article. The Court may also wish to reconsider *Kalle en banc* to ensure that section and chapter notes are given their correct and limited scope of application. If *Kalle* is reconsidered, the Trade Court should be required, on remand, to determine whether the essential character of these gloves is plastic or knit fabric.

Respectfully submitted,

/s/Lawrence M. Friedman
(lfriedman@barnesrichardson.com)
BARNES, RICHARDSON & COLBURN LLP
303 East Wacker Drive
Suite 305
Chicago, Illinois 60601
(312) 565-2000

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-1793

**Short Case Caption:** Magid Glove & Safety Mfg. Co. LLC v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 3,364 words.

☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.

☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 12/28/2022

Signature: /s/ Lawrence M. Friedman

Name: Lawrence M. Friedman

Save for Filing